# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| APPLESEED'S INTERMEDIATE HOLDINGS LLC, *et al.*,[1] | Case No. 11-10160 (KG) |
| Debtors. | Joint Administration Requested |

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KURTZMAN CARSON CONSULTANTS LLC AS NOTICE, CLAIMS AND BALLOTING AGENT

Appleseed's Intermediate Holdings LLC d/b/a Orchard Brands ("*AIH*") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "*Debtors*"),[2] respectfully represent:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Appleseed's Intermediate Holdings LLC (6322); Appleseed's Acquisition, Inc. (5835); Appleseed's Holdings, Inc. (9117); Arizona Mail Order Company, Inc. (6359); Bedford Fair Apparel, Inc. (3551); Blair Credit Services Corporation (5966); Blair Factoring Company (4679); Blair Holdings, Inc. (0022); Blair International Holdings, Inc. (8962); Blair LLC (1670); Blair Payroll, LLC (1670); Draper's & Damon's Acquisition LLC (1760); Draper's & Damon's LLC (2759); Fairview Advertising, LLC (2877); Gold Violin LLC (0873); Haband Acquisition LLC (8765); Haband Company LLC (8496); Haband Oaks, LP (8036); Haband Online, LLC (1109); Haband Operations, LLC (2794); Johnny Appleseed's, Inc. (5560); Linen Source Acquisition LLC (2920); LM&B Catalog, Inc. (5729); Monterey Bay Clothing Company, Inc. (2076); Norm Thompson Outfitters, Inc. (8344); NTO Acquisition Corporation (0995); Orchard Brands Insurance Agency LLC (4858); and Wintersilks, LLC (0688). The Debtors' main corporate address is 138 Conant Street, Beverly, Massachusetts 01915.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this application and the Debtors' chapter 11 cases, are set forth in greater detail in the Declaration of T. Neale Attenborough, Chief Executive Officer of Appleseed's Intermediate Holdings LLC, in Support of First Day Pleadings (the "*First Day Declaration*"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"), on January 19, 2011 (the "*Petition Date*").

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are section 156(c) of title 28 of the United States Code (the "*Judicial Code*"), section 503(b) of the Bankruptcy Code and Rules 2002-1(f) and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*").

## Relief Requested

4. By this application (the "*Application*"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to employ and retain Kurtzman Carson Consultants LLC ("*KCC*") as notice, claims and balloting agent in these chapter 11 cases, pursuant to the terms and conditions set forth in the services agreement between AIH and KCC dated as of December 8, 2010 (the "*Services Agreement*" a copy of which is annexed as **Exhibit 1** to **Exhibit A** attached hereto and incorporated herein by reference) and (b) approving the terms of KCC's employment and the indemnification provisions set forth in the Services Agreement (as modified pursuant to this Application). In support of this application, the Debtors submit the Declaration of Albert H. Kass, Vice President of Corporate Restructuring Services (the "*Kass Declaration*"), a copy of which is attached hereto as **Exhibit B**.

## KCC's Qualifications

5. The Debtors believe that they may have a total of more than 30,000 potential creditors. With such a significant number of parties involved in these chapter 11 cases, it is

2

PHIL1 1356838-1

likely that heavy administrative burdens will be imposed upon the Court and the Clerk of the United States Bankruptcy Court for the District of Delaware (the "*Clerk's Office*"). To relieve the Clerk's Office of these burdens and comply with the Local Rules, the Debtors seek to engage KCC as an independent, third-party notice, claims and balloting agent to effectively and efficiently serve notice upon all creditors and other relevant constituencies in these chapter 11 cases, as well as transmit, receive, docket and maintain all proofs of claim and proofs of interest filed in these chapter 11 cases.

6. KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, balloting and other related services critical to the effective administration of chapter 11 cases. KCC has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing, claims processing and balloting aspects of chapter 11 cases that ensure the orderly and fair treatment of creditors, equity security holders and all parties in interest. Further, KCC has experience working with, and will continue to work with, the Clerk's Office to ensure that KCC's services conform with all of the Court's procedures, the Local Rules and any orders entered by this Court.

7. KCC has substantial experience in matters of this size and complexity and has acted as the official notice, claims and balloting agent in many large chapter 11 cases in this District. *See, e.g., In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (Bankr. D. Del. Nov. 18, 2010); *In re OTC Holdings Corp.*, Case No. 10-12636 (Bankr. D. Del. Aug. 25, 2010); *In re Am. Safety Razor Co., LLC*, Case No. 10-12351 (Bankr. D. Del. July 28, 2010); I*n re Magic Brands, LLC*, Case No. 10-11310 (Bankr. D. Del. Apr. 21, 2010); *In re Regent Commc'ns, Inc.*, Case No. 10-10632 (Bankr. D. Del. Mar. 1, 2010); *In re Specialty Packaging Holdings, Inc.*,

Case No. 10-10142 (Bankr. D. Del. Jan. 20, 2010); *In re Int'l Aluminum Corp.*, Case No. 10-10003 (Bankr. D. Del. Jan.4, 2010); *In re Triple Crown Media, Inc.*, Case No. 09-13181 (Bankr. D. Del. Sept. 14, 2009); *In re Cooper-Standard Holdings Inc.*, Case No. 09-12743 (Bankr. D. Del. Aug. 3, 2009); *In re Visteon Corp.*, No. 09-11786 (Bankr. D. Del. May 28, 2009); *In re Source Interlink Cos., Inc.*, Case No. 09-11424 (Bankr. D. Del. Apr. 27, 2009); *In re HPG Int'l, Inc.*, Case No. 09-10231 (Bankr. D. Del. Jan. 23, 2009).

## Services Performed

8. In accordance with the terms and conditions of the Services Agreement, and in compliance with Local Rule 2002-1(f), it is anticipated that KCC will perform the services required pursuant thereto (and noted below), as well as any additional services at the request of the Debtors or the Clerk's Office.

9. Specifically, the Debtors seek to engage KCC to provide certain noticing, claims processing and balloting administration services, including:[3]

   a. Preparing and serving required notices in the chapter 11 cases, including:

      (i) notice of the commencement of the chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

      (ii) a notice of the claims bar date (when established);

      (iii) notices of objections to claims and objections to transfers of claims;

---

[3] The summary of the Services Agreement in this Application is qualified in its entirety by reference to the provisions of the Services Agreement. To the extent there is any discrepancy between the summary contained in this Application and the terms set forth in the Services Agreement, the terms of the Services Agreement shall control. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Services Agreement.

4

- (iv) notices of hearings on motions filed by the Office of the United States Trustee for the District of Delaware (the "*U.S. Trustee*");

- (v) notices of transfers of claims;

- (vi) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization; and

- (vii) such other miscellaneous notices as the Debtors or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases.

b. Within seven days after the mailing of a particular notice, filing with the Court a copy of the notice served with a certificate of service attached indicating the name and complete address of each party served.

c. Receiving, examining and maintaining copies of all proofs of claim and proofs of interest filed in the chapter 11 cases.

d. Maintaining an official claims register (or registers) in the chapter 11 cases by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each such claim or interest asserted:

- (i) the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent;

- (ii) the date the proof of claim or proof of interest was received by KCC and/or the Court;

- (iii) the claim number assigned to the proof of claim or proof of interest;

- (iv) the asserted amount and classification of the claim; and

- (v) the applicable Debtor against which the claim or interest is asserted.

e. Recording all transfers of claims pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*").

5

f. Revising the creditor matrix after the applicable objection period expires.

g. Recording any order entered by the Court that may affect a claim by making a notation on the claims register.

h. Monitoring the Court's docket for any claims-related pleading filed and making necessary notations on the claims register.

i. Maintaining a separate claims register for each debtor if the chapter 11 cases are jointly administered.

j. Filing a quarterly updated claims register with the Court in alphabetical and numerical order. If there was no claims activity, a certification of no claim activity may be filed.

k. Maintaining an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or request for notices in the case and providing such list to the Court or any interested party upon request (within 48 hours).

l. Providing access to the public for examination of claims and the claims register at no charge.

m. Forwarding all claims, an updated claims register and an updated mailing list to the Court within ten days of entry of an order converting a case or within 30 days of entry of a final decree. The claims register and mailing list will be provided in both paper and on disc and in alphabetical and numerical order. The mailing list disc will be in .txt format.

n. Implementing necessary security measures to ensure the completeness and integrity of the claims register.

o. Complying with applicable federal, state, municipal and local statutes, ordinances, rules, regulations, orders and other requirements.

p. Providing temporary employees to process claims as necessary.

q. Promptly complying with such further conditions and requirements as the Clerk's Office or the Court may at any time prescribe.

r.  Providing such other claims processing, noticing and administrative services as may be requested from time to time by the Debtors.

10. KCC will follow the notice and claim procedures that conform to the guidelines promulgated by the Clerk's Office, section 331 of the Judicial Code (the "***Judicial Conference of the United States***") and as may be directed by the Court.

## Professional Compensation

11. The Debtors propose to retain KCC at the rates set forth in the Services Agreement. In addition, before the Petition Date, the Debtors paid a retainer to KCC in the amount of $30,000. The Debtors respectfully submit that KCC's rates for its notice, claims processing and balloting services are competitive and comparable to the rates charged by its competitors for similar services. Indeed, the Debtors' compared KCC's rates to those of certain of KCC's competitors before engaging KCC on the terms included in the Services Agreement.

12. Furthermore, the Debtors respectfully submit that the fees and expenses incurred by KCC are administrative in nature pursuant to section 503(b)(1)(A) of the Bankruptcy Code and, therefore, should not be subject to the standard fee application procedures for professionals. Specifically, the Debtors request authorization to compensate KCC on a monthly basis (in the ordinary course of business and in accordance with the terms and conditions set forth in the Services Agreement) upon KCC's submission to the Debtors of invoices summarizing, in reasonable detail, the services rendered and expenses incurred in connection with services provided by KCC to the Debtors.

13. As of the Petition Date, the Debtors do not owe KCC any amounts for services rendered before the Petition Date. Although certain expenses and fees may have been incurred

7

but not yet applied to the retainer, such amounts, if any, would be less than the balance of the retainer as of the Petition Date.

**Disinterestedness**

14.   Although the Debtors do not propose to retain KCC under section 327 of the Bankruptcy Code, KCC has nonetheless conducted a conflicts analysis. As disclosed in the Kass Declaration, to the best of KCC's knowledge, and except as otherwise disclosed in the Kass Declaration, KCC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and neither holds nor represents an interest adverse to the Debtors' estates nor has a connection to the Debtors, their creditors or their related parties with respect to any matter for which KCC will be employed.

15.   Should KCC discover any relevant facts or relationships bearing on the matters described herein, KCC will use reasonable efforts to promptly file a supplemental declaration with the Court.

16.   KCC further represents that:

   a.   it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as agent;

   b.   by accepting employment in these chapter 11 cases, KCC waives any right to receive compensation from the United States government; and

   c.   in its capacity as agent, KCC will not be an agent of the United States and will not act on behalf of the United States.

**Indemnification**

17.   As part of the overall compensation payable to KCC under the terms of the Services Agreement, the Debtors have agreed to certain indemnification obligations as

8

PHIL1 1356838-1

specifically enumerated in the Services Agreement, to the extent permitted by applicable law and as set forth in the proposed order attached hereto as **Exhibit A**.

18. The terms of the Services Agreement and indemnification provisions included therein were negotiated at arm's-length between the Debtors and KCC and the Debtors respectfully submit that these provisions of the Services Agreement are reasonable and in the best interests of the Debtors, their estates and creditors.

19. Moreover, consistent with the practice in this jurisdiction, the Debtors requested, and KCC has agreed, that the Court approve the indemnification provisions reflected in the Services Agreement subject to the modifications set forth in the proposed order attached hereto as **Exhibit A**.

20. The Debtors believe that the proposed modifications to the indemnification provisions of the Service Agreement are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction and should be approved.

## Supporting Authority

21. Section 156(c) of the Judicial Code, which governs the staffing and expenses of the Court, authorizes the Court to use facilities other than the Clerk's Office for administration of chapter 11 cases:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

22. In addition, Local Rule 2002-1(f) provides, in relevant part, as follows:

> <u>Notice and Claims Clerk</u>. Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest listed in the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter.

Del. Bankr. L.R. 2002-1(f).

23. Accordingly, section 156(c) of the Judicial Code empowers the Court to utilize outside agents and facilities for notice and claims purposes, provided the Debtors' estates pay the cost of such services. Additionally, Local Rule 2002-1(f) requires that a debtor in a case with over 200 creditors (such as these chapter 11 cases) file a motion to retain a claims agent on the first day of the case or within seven days thereafter. Thus the Debtors retention of KCC as the notice, claims and balloting agent in these chapter 11 cases is consistent with controlling law and is in the best interests of the Debtors, their estates and creditors.

24. Courts in this jurisdiction and others have approved relief similar to the relief requested in this application. *See, e.g., In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (Bankr. D. Del. Nov. 19, 2010); *In re OTC Holdings Corp.*, Case No. 10-12636 (Bankr. D. Del. Aug. 27, 2010); *In re NEC Holdings Corp.*, Case No. 10-11890 (Bankr. D. Del. June 11, 2010); *In re MiddleBrook Pharmaceuticals, Inc.*, Case No. 10-11485 (Bankr. D. Del. May 4, 2010); *In re Atrium Corp.*, Case No. 10-10150 (Bankr. D. Del. Jan. 21, 2010); *In re Int'l Aluminum Corp.*, Case No. 10-10003 (Bankr. D. Del. Jan. 6, 2010).[4]

---

[4] Because of the voluminous nature of the orders cited herein, such orders are not attached to this motion. Copies of these orders are available upon request to the Debtors' counsel.

## Notice

25. The Debtors have provided notice of this motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agents for the Debtors' proposed debtor in possession lenders; (d) counsel to the agent for the Debtors' prepetition asset-based revolving lending facility; (e) counsel to the agent for the Debtors' prepetition first lien term loan; (f) counsel to the agent for the Debtors' prepetition second lien notes and unsecured notes; (g) the Delaware Secretary of State; (h) the Delaware Secretary of Treasury; (i) the Delaware State Attorney General; (j) the Office of the United States Attorney General for the State of Delaware; (k) the Internal Revenue Service; and (l) the Securities and Exchange Commission. In light of the nature of the relief requested in this motion, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

26. No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, for the reasons set forth herein, the First Day Declaration and the Kass Declaration, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to employ and retain KCC as notice, claims and balloting agent in accordance with the terms set forth in the Service Agreement and (b) granting such other and further relief as may be appropriate.

Dated: January 19, 2011  
Wilmington, Delaware

Appleseed's Intermediate Holdings LLC
Appleseed's Acquisition, Inc.
Appleseed's Holdings, Inc.
Arizona Mail Order Company, Inc.
Bedford Fair Apparel, Inc.
Blair Credit Services Corporation
Blair Factoring Company
Blair Holdings, Inc.
Blair International Holdings, Inc.
Blair LLC
Blair Payroll, LLC
Draper's & Damon's Acquisition LLC
Draper's & Damon's LLC
Fairview Advertising, LLC
Gold Violin LLC
Haband Acquisition LLC
Haband Company LLC
Haband Oaks, LP
Haband Online, LLC
Haband Operations, LLC
Johnny Appleseed's, Inc.
Linen Source Acquisitions LLC
LM&B Catalog, Inc.
Monterey Bay Clothing Company, Inc.
Norm Thompson Outfitters, Inc.
NTO Acquisition Corporation
Orchard Brands Insurance Agency LLC
Wintersilks, LLC

*/s/ T. Neale Attenborough*
T. Neale Attenborough
Chief Executive Officer
Appleseed's Intermediate Holdings LLC