IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| APPLESEED'S INTERMEDIATE | ) Case No. 11-10160 (KG) |
| HOLDINGS LLC, *et al.*,[1] | ) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

**DEBTORS' MOTION FOR ENTRY
OF INTERIM AND FINAL ORDERS DETERMINING
ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES**

Appleseed's Intermediate Holdings LLC d/b/a Orchard Brands and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "*Debtors*"),[2] respectfully represent:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Appleseed's Intermediate Holdings LLC (6322); Appleseed's Acquisition, Inc. (5835); Appleseed's Holdings, Inc. (9117); Arizona Mail Order Company, Inc. (6359); Bedford Fair Apparel, Inc. (3551); Blair Credit Services Corporation (5966); Blair Factoring Company (4679); Blair Holdings, Inc. (0022); Blair International Holdings, Inc. (8962); Blair LLC (1670); Blair Payroll, LLC (1670); Draper's & Damon's Acquisition LLC (1760); Draper's & Damon's LLC (2759); Fairview Advertising, LLC (2877); Gold Violin LLC (0873); Haband Acquisition LLC (8765); Haband Company LLC (8496); Haband Oaks, LP (8036); Haband Online, LLC (1109); Haband Operations, LLC (2794); Johnny Appleseed's, Inc. (5560); Linen Source Acquisition LLC (2920); LM&B Catalog, Inc. (5729); Monterey Bay Clothing Company, Inc. (2076); Norm Thompson Outfitters, Inc. (8344); NTO Acquisition Corporation (0995); Orchard Brands Insurance Agency LLC (4858); and Wintersilks, LLC (0688). The Debtors' main corporate address is 138 Conant Street, Beverly, Massachusetts 01915.

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the Declaration of T. Neale Attenborough, Chief Executive Officer of Appleseed's Intermediate Holdings LLC, in Support of First Day Pleadings (the "*First Day Declaration*"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"), on January 19, 2011 (the "*Petition Date*").

K&E 18271768.1
PHIL1 1356859-1

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code, Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***").

### Relief Requested

4. By this motion, the Debtors request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "***Interim Order***" and "***Final Order***," respectively), (a) determining that the Debtors' utility providers (as such term is used in section 366 of the Bankruptcy Code and as described herein, collectively the "***Utility Providers***") have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, (b) approving the Debtors' proposed adequate assurance, (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance pending entry of the Final Order, (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this motion and the adequate assurance procedures described herein and annexed as **Exhibit 1** to **Exhibit A** attached hereto and incorporated herein by reference (the "***Adequate Assurance Procedures***") and (e) scheduling a final hearing (the "***Final Hearing***") to consider entry of the Final Order to the extent a Final Hearing is necessary.

## Basis for Relief

**A.  Utilities Services**

5.  In the ordinary course of business, the Debtors obtain gas, water, sewer, electric, telephone and other similar utility services from various Utility Providers. Approximately 100 Utility Providers render these services to the Debtors. A list of the Utility Providers that provide services to the Debtors as of the Petition Date (the "*Utility Service List*") is set forth on **Exhibit 2** to **Exhibit A** attached hereto.[3]  On average, the Debtors spend approximately $600,000 per month for utility services.

6.  Uninterrupted utility services are essential to the Debtors' ongoing operations. Indeed, any interruption in utility services – even for a brief period of time – would negatively affect the Debtors' operations, customer relationships, revenues and profits, thereby seriously jeopardizing the Debtors' reorganization efforts and, ultimately, value and creditor recoveries. Thus, it is critical that utility services continue uninterrupted during these chapter 11 cases.

**B.  The Proposed Adequate Assurance**

7.  The Debtors intend to pay postpetition obligations owed to the Utility Providers in a timely manner. Contemporaneously herewith, the Debtors have filed a motion seeking authority to enter into a $140 million debtor in possession credit facility (the "*Proposed DIP Facility*"). The Debtors expect that cash flows from operations and borrowings under the Proposed DIP Facility will be sufficient to pay postpetition obligations related to their utility services.

---

[3] The listing of an entity on the Utility Service List is not an admission that such entity is a Utility Provider within the meaning of section 366 of the Bankruptcy Code. The Debtors reserve the right to contest any such characterization at any time in the future.

8. To provide additional assurance of payment for future services to the Utility Providers, the Debtors propose to deposit $300,000 – which represents an amount equal to the estimated aggregate cost for two weeks of utility service, calculated as a historical average over the past twelve months (the "*Adequate Assurance Deposit*") – into a segregated, interest-bearing account (the "*Utility Deposit Account*") for the benefit of Utility Providers on or before the date that is 20 days after the Petition Date.[4]

9. In the event that the Debtors amend the Utility Service List to add one or more additional Utility Providers, the Debtors shall promptly add to the Adequate Assurance Deposit in the Utility Deposit Account the estimated amount equivalent to two weeks of utility services for each subsequently-added Utility Provider.

10. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' demonstrated ability to pay for future utility services in the ordinary course of business (together, the "*Proposed Adequate Assurance*"), constitutes sufficient adequate assurance to the Utility Providers in full satisfaction of section 366 of the Bankruptcy Code.

C. **The Adequate Assurance Procedures**

11. If a Utility Provider is not satisfied with the Proposed Adequate Assurance, any such Utility Provider may make requests for additional or different adequate assurance of future payment pursuant to the Adequate Assurance Procedures (each a "*Request*").

12. The Adequate Assurance Procedures generally set forth a streamlined process to enable Utility Providers to evaluate and address potential concerns with respect to the Proposed

---

[4] The Debtors further request that any Adequate Assurance Deposit required by and deposited into the Utility Deposit Account on behalf of any Utility Provider, be returned to the Debtors after the effective date of any plan of reorganization in these chapter 11 cases, if not applied earlier by any such Utility Provider.

Adequate Assurance and make a Request of the Debtors, while at the same time allowing the Debtors to continue their business operations uninterrupted. More specifically, the Adequate Assurance Procedures permit a Utility Provider to object to the Proposed Adequate Assurance by filing and serving a Request upon the Notice Parties (as defined in the Adequate Assurance Procedures) within a specified period of time. The Debtors may then resolve, in their sole discretion, any Request by mutual agreement with the Utility Provider and without further order by the Court. If the Request cannot be resolved, the Debtors request the right to seek a hearing with the Court to resolve the Request. Furthermore, the Adequate Assurance Procedures set forth notice procedures to Utility Providers subsequently added to the Utility Service List and such subsequently added Utility Providers will be bound by the Adequate Assurance Procedures.

13. The Debtors request that all Utility Providers who do not timely file an objection or make a Request pursuant to the Adequate Assurance Procedures be deemed to consent to the Proposed Adequate Assurance and be bound by the Interim Order or the Final Order, as applicable.

14. Moreover, the Debtors request that the relief granted in the Interim Order and the Final Order apply to all Utility Providers rendering utility services to the Debtors and not be limited to those listed on the Utility Service List.

**D.   Final Hearing Date**

15. Section 366 of the Bankruptcy Code arguably places the burden on the debtor to provide adequate assurance that a utility provider finds satisfactory and to seek court review if the utility provider does not accept the proposed adequate assurance. Under this interpretation of section 366 of the Bankruptcy Code, a Utility Provider could, theoretically, on the 20th day following the Petition Date, announce that the Proposed Adequate Assurance is not acceptable

and demand an extortionary deposit or prepayment from the Debtors and threaten to terminate utility service the next day unless the Debtors comply with such a demand. While the Debtors do not concede that this is a correct interpretation of section 366 of the Bankruptcy Code, the Debtors nonetheless believe it is prudent to require Utility Providers to raise any objections to the Proposed Adequate Assurance so that objections may be heard within the first 30 days of these chapter 11 cases, thus avoiding the potentially disastrous consequence of having utility services suddenly interrupted.

16. Accordingly, the Debtors request that the Court schedule the Final Hearing approximately 30 days after the Petition Date. The Debtors will send notice of the Final Hearing (the "*Final Hearing Notice*"), together with this motion and the Interim Order, to all Utility Providers listed on the Utility Service List, no later than two business days after entry of the Interim Order. The Debtors further request that in the event no objections to entry of the Final Order are timely received, the Court may enter the Final Order without need for the Final Hearing.

## Supporting Authority

**A.     The Utility Providers are Adequately Assured of Payment for Future Service**

17.    Approval of the Proposed Adequate Assurance, including the Adequate Assurance Deposit and the Adequate Assurance Procedures, is appropriate pursuant to sections 105(a) and 366 of the Bankruptcy Code.[5]

18.    Section 366(a) of the Bankruptcy Code provides that "a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due." 11 U.S.C. § 366(a).

19.    Sections 366(b) and (c), however, provide that a utility may discontinue service to a debtor after specified periods where the debtor has failed to provide adequate assurance of payment for future services. Specifically, section 366(b) of the Bankruptcy Code provides that a utility provider "may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of deposit or other security, for services after such date." 11 U.S.C. § 366(b). Similarly, section 366(c)(2) of the Bankruptcy Code provides that a utility provider may discontinue its services to a debtor if the debtor has not furnished adequate assurance of payment within 30 days after the petition date. 11 U.S.C. § 366(c)(2).

---

[5] Section 105(a) of the Bankruptcy Code also provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." The purpose of section 105(a) of the Bankruptcy Code is "to assure the bankruptcy courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of their jurisdiction." Collier on Bankruptcy P 105.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

20. Congress enacted section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing, while at the same time providing utility companies with adequate assurance that the debtors will pay for postpetition services. *See* H.R. REP. NO. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 of the Bankruptcy Code protects debtors by prohibiting utilities from altering, refusing or discontinuing services to a debtor solely on account of unpaid prepetition amounts for a period of 20 days after a chapter 11 filing. At the same time, section 366 of the Bankruptcy Code protects utilities by permitting them to alter, refuse or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility provider. 11 U.S.C. § 366(c)(2).

21. Section 366(c) of the Bankruptcy Code also restricts the factors that a court may consider when determining whether adequate assurance is, in fact, adequate. Specifically, courts no longer may consider (a) the absence of a security deposit before a debtor's petition date; (b) a debtor's history of timely payments; or (c) the availability of an administrative expense priority when determining the amount of a deposit. 11 U.S.C. § 366(c). Notwithstanding these changes, it does not appear that Congress intended to – or did – abrogate the bankruptcy court's ability to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate."

22. Thus, while section 366(c) of the Bankruptcy Code limits the factors a court can consider when determining whether a debtor has provided adequate assurance of payment, it does not limit a court's ability to determine the appropriate amount of assurance of payment. Instead, section 366(c) of the Bankruptcy Code gives courts the same discretion in determining the amount necessary for adequate assurance that they previously had under section 366(b) of the

Bankruptcy Code. *Compare* 11 U.S.C. § 366(b) (2005) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."), *with* 11 U.S.C. § 366(c)(3)(A) (2005) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2)."), *and In re Circuit City Stores, Inc.*, Case No. 08-35653, 2009 WL 484553, at *4 (Bankr. E.D.Va. Jan. 14, 2009) ("Section 366(c)(3) uses language almost identical as that employed in § 366(b) in allowing courts to modify the amount of adequate assurance. It follows that courts retain similar discretion even after the enactment of the BAPCPA.") *See also In re Bedford Town Condominium*, 427 B.R. 380 (Bankr. D. Md. 2010) ("The Debtor's payment of the adequate assurance required by the [u]tilities is not a condition precedent to the Court's authority to modify that amount under § 366(c)(3)(A).")

23. Further, section 366 of the Bankruptcy Code requires only that a utility provider's assurance of future payment be "adequate." 11 U.S.C. § 366. Courts recognize that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. *See, e.g.*, *In re Circuit City Stores, Inc.*, Case No. 08-35653, 2009 WL 484553, at *4 (Bankr. E.D.Va. Jan. 14, 2009) ("A debtor need not provide utility companies an absolute guarantee of payment."); *see also In re Steinebach*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . a Bankruptcy Court is not required to give a utility company the equivalent of a guarantee of payment, but must only determine that the utility is not subject to any unreasonable risk of non-payment for postpetition services.") (citing *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002)); *see also In re Caldor, Inc.-N.Y.*, 199 B.R. 1, 3 (Bankr. S.D.N.Y. 1996) (section 366(b) "does not require an

9

'absolute guarantee of payment'"), *aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc.-N.Y.*, 117 F.3d 646 (2d Cir. 1997).

24.     Courts have also recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." *Virginia Elec. & Power Co.*, 117 F.2d at 650 (emphasis in original); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that no utility deposits were necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected"). Accordingly, demands by a utility provider for a guarantee of payment should be refused when the debtor's specific circumstances already afford adequate assurance of payment.

25.     The Debtors submit that the Proposed Adequate Assurance provides more than adequate assurance of payment to the Utility Providers. Contemporaneously herewith, the Debtors are seeking approval of the Proposed DIP Facility that will enable them to pay their operating costs and expenses, including utility costs, as they come due. The Debtors anticipate having sufficient resources to pay, and intend to pay all valid postpetition obligations for utility services in a timely manner, especially considering that the aggregate amount of the Debtors' utility obligations is not overwhelming. In addition, the Debtors' reliance on utility services for the operation of their businesses provides them with a powerful incentive to stay current on their utility obligations. These factors, which the Court may (and should) consider when determining the amount of any adequate assurance payments, justify a finding that the Proposed Adequate Assurance is appropriate.

26. Further, the proposed Adequate Assurance Procedures are necessary for the Debtors to carry out their restructuring efforts. If the Adequate Assurance Procedures are not approved, the Debtors could be forced to address a multitude of requests by their Utility Providers in a disorganized manner at critical points in these chapter 11 cases. In addition, the Debtors could be blindsided by a Utility Provider unilaterally deciding – on or after the 20th day following the Petition Date – that it is not adequately protected and, as a result, discontinuing service or making exorbitant demands as a condition to providing further service. Courts have recognized the importance of implementing procedures to provide an orderly process to determine whether the debtors proposed assurance of future payment is adequate under section 366 of the Bankruptcy Code in order to prevent cutoff of utility services at a critical point in the reorganization process. *See, e.g.*, *In re Circuit City Stores, Inc.*, Case No. 08-35653, 2009 WL 484553, at *4 (Bankr. E.D.Va. Jan. 14, 2009) (recognizing that without such procedures "debtors could be forced to address numerous requests by utility companies in an unorganized manner" and that an orderly process is necessary for a smooth transition in chapter 11); *see also In re Syroco, Inc.*, 374 B.R. 60 (Bankr. D.P.R. 2007) (noting that prohibiting the use of reasonable procedures to implement the protections afforded under section 366 of the Bankruptcy Code threatens a debtors' efforts to reorganize). Discontinuation of utility services, particularly telecommunications or electricity services, at any given location, could jeopardize the Debtors' ability to respond and distribute products and services to their customers, which could essentially shut down the Debtors' operations. Of course, any significant disruption of operations would jeopardize the Debtors' restructuring efforts.

27. Courts in this jurisdiction have approved relief similar to the relief requested in this motion. *See, e.g.*, *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (Bankr. D.

Del. Dec. 10, 2010); *In re OTC Holdings Corp.*, Case No. 10-12636 (Bankr. D. Del. Sept. 17, 2010); *In re NEC Holdings Corp.*, Case No. 10-11890 (Bankr. D. Del. July 13, 2010); *In re MiddleBrook Pharmaceuticals, Inc.*, Case No. 10-11485 (Bankr. D. Del. June 3, 2010); *In re Atrium Corp.*, Case No. 10-10150 (Bankr. D. Del. Feb. 25, 2010); *In re Int'l Aluminum Corp.*, Case No. 10-10003 (Bankr. D. Del. Jan. 6, 2010).[6]

## The Requirements of Bankruptcy Rule 6003 are Satisfied

28. As described above, the Debtors are seeking authority pursuant to the Interim Order to provide adequate assurance of payment for future utility services in the form of the Debtors' proposed Adequate Assurance Deposit during the first 21 days of these chapter 11 cases. Under Bankruptcy Rule 6003, the Court may authorize the Debtors to provide the proposed Adequate Assurance Deposit within the 21-day period after the Petition Date because such relief is necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

29. As discussed above, it is essential that the Debtors are assured immediate and continuous access to the Utility Providers' services. Any disruption in the Debtors' ability to obtain those services may result in an immediate interruption or diminution in the Debtors' business operations to the detriment of their estates and all parties in interest in these chapter 11 cases. Accordingly, the Debtors respectfully submit that they have satisfied the "immediate and

---

[6] Because of the voluminous nature of the orders cited herein, such orders are not attached to this motion. Copies of these orders are available upon request to the Debtors' counsel.

PHIL1 1356859-1

irreparable harm" standard of Bankruptcy Rule 6003 and seek authority to pay the Adequate Assurance Deposit into the Utility Deposit Account pursuant to the Interim Order.

### Waiver of Bankruptcy Rules Regarding Notice and Stay of an Order

30. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of an order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h), 7062, 9014 or otherwise.

### Notice

31. The Debtors have provided notice of this motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agents for the Debtors' proposed debtor in possession lenders; (d) counsel to the agent for the Debtors' prepetition asset-based revolving lending facility; (e) counsel to the agent for the Debtors' prepetition first lien term loan; (f) counsel to the agent for the Debtors' prepetition second lien notes and unsecured notes; (g) the Delaware Secretary of State; (h) the Delaware Secretary of Treasury; (i) the Delaware State Attorney General; (j) the Office of the United States Attorney General for the State of Delaware; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission and (m) each of the Utility Providers identified on the Utilities Service List. In light of the nature of the relief requested in this motion, the Debtors respectfully submit that no further notice is necessary.

### No Prior Request

32. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein and in the First Day Declaration, the Debtors respectfully request that the Court enter the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A**, and **Exhibit B**, respectively, (a) determining that the Debtors' Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, (b) approving the Proposed Adequate Assurance, including the Adequate Assurance Deposit and related Adequate Assurance Procedures, (c) prohibiting the Utility Providers from altering, refusing or discontinuing services on account of prepetition amounts outstanding or on account of any perceived inadequacy of the

Debtors' proposed adequate assurance pending entry of a Final Order, (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this motion and the Adequate Assurance Procedures described herein and annexed as **Exhibit 1** to **Exhibit A** attached hereto, (e) scheduling the Final Hearing to consider entry of the Final Order to the extent a Final Hearing is necessary and (f) granting such other and further relief as may be appropriate.

Dated: January 19, 2011  
Wilmington, Delaware

/s/ Domenic E. Pacitti
---
Domenic E. Pacitti (DE Bar No. 3989)  
Michael W. Yurkewicz (DE Bar No. 4165)  
Margaret M. Manning (DE Bar No. 4183)  
**KLEHR HARRISON HARVEY BRANZBURG LLP**  
919 N. Market Street, Suite 1000  
Wilmington, Delaware 19801-3062  
Telephone:    (302) 426-1189  
Facsimile:    (302) 426-9193

- and -

Richard M. Cieri (*pro hac vice* admission pending)  
Joshua A. Sussberg (*pro hac vice* admission pending)  
Brian E. Schartz (*pro hac vice* admission pending)  
**KIRKLAND & ELLIS LLP**  
601 Lexington Avenue  
New York, New York 10022-4611  
Telephone:    (212) 446-4800  
Facsimile:    (212) 446-4900

*Proposed Co-Counsel to the Debtors and Debtors in Possession*