# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| APPLESEED'S INTERMEDIATE | ) | Case No. 11-10160 (KG) |
| HOLDINGS LLC, et al.,[1] | ) |  |
|  | ) |  |
| Debtors. | ) | Joint Administration Requested |
|  | ) |  |
|  | ) | **Related to Docket No. 6** |

## INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363(c), 363(e), 364 AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, (IV) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES AND (V) SCHEDULING A FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(b) AND (c)

This matter is before the above-captioned court (the "Bankruptcy Court") on the

motion filed by Appleseed's Intermediate Holdings LLC and its debtor affiliates, as debtors and

debtors in possession (collectively, the "Debtors") in the above captioned chapter 11 cases

(collectively, the "Cases"), dated January 19, 2011 (the "Motion") requesting entry of an interim

order (this "Interim Order") and a final order ("Final Order"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Appleseed's Intermediate Holdings LLC (6322); Appleseed's Acquisition, Inc. (5835); Appleseed's Holdings, Inc. (9117); Arizona Mail Order Company, Inc. (6359); Bedford Fair Apparel, Inc. (3551); Blair Credit Services Corporation (5966); Blair Factoring Company (4679); Blair Holdings, Inc. (0022); Blair International Holdings, Inc. (8962); Blair LLC (1670); Blair Payroll, LLC (1670); Draper's & Damon's Acquisition LLC (1760); Draper's & Damon's LLC (2759); Fairview Advertising, LLC (2877); Gold Violin LLC (0873); Haband Acquisition LLC (8765); Haband Company LLC (8496); Haband Oaks, LP (8036); Haband Online, LLC (1109); Haband Operations, LLC (2794); Johnny Appleseed's, Inc. (5560); Linen Source Acquisition LLC (2920); LM&B Catalog, Inc. (5729); Monterey Bay Clothing Company, Inc. (2076); Norm Thompson Outfitters, Inc. (8344); NTO Acquisition Corporation (0995); Orchard Brands Insurance Agency LLC (4858); and Wintersilks, LLC (0688). The Debtors' main corporate address is 138 Conant Street, Beverly, Massachusetts 01915.

(1)     for immediate authorization and approval, pursuant to sections 105, 361, 362, 363(c), 363(e), 364 and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for Johnny Appleseed's, Inc. and the other entities listed as Borrowers[2] on the signature pages to the DIP Facility Agreement, each as a Borrower, to obtain postpetition financing up to the principal amount of $140,000,000 (inclusive of a $30,000,000 sublimit for Letters of Credit and a $20,000,000 sublimit for a swing line subfacility) (the "DIP Facility"), and authorization for Appleseed's Intermediate Holdings LLC ("Holdings") and each Subsidiary Guarantor (together with Holdings, the "Guarantors") to guarantee the repayment of the DIP Obligations (as defined herein), from (a) with respect to the Tranche A Facility (as defined herein), UBS AG, Stamford Branch ("UBS"), as Tranche A Administrative Agent (the "Tranche A Administrative Agent" and, as co-collateral agent with Wells Fargo Bank, National Association, each a "Co-Collateral Agent" and, collectively, the "Collateral Agents"), UBS Securities LLC as sole lead arranger and sole bookrunner, UBS Loan Finance LLC ("UBS Loan Finance"), as swingline lender (in such capacity, the "Swingline Lender"), Wells Fargo Bank, National Association ("Wells Fargo"), UBS, as issuing bank (the "Issuing Bank") and Ally Commercial Finance, LLC ("Ally" and together with UBS Loan Finance and Wells Fargo, the "Tranche A Lenders") and (b) with respect to the Tranche B Facility (as defined herein), Ableco Finance LLC as administrative agent (the "Tranche B Administrative Agent" and together with the Tranche A Administrative Agent, the "Administrative Agents"), American Capital, Ltd. ("ACAS") as disbursement agent (the "Tranche B Disbursement Agent", and together with the Tranche B Administrative Agent, the "Tranche B Agents" and together with the Tranche A Administrative

---

[2]     Each capitalized term used but not defined herein shall have the meaning ascribed to it in the DIP Facility Agreement (as defined herein).

Agent and the Collateral Agents, the "DIP Facility Agents") and Ableco Finance LLC (in its capacity as a Tranche B Lender, "Ableco"), ACAS, Highland Capital Management LP ("Highland") and Canyon Capital Advisors, LLC ("Canyon" and together with Ableco, ACAS and Highland, the "Tranche B Lenders" and, together with the Tranche A Lenders, the "DIP Facility Lenders");

(2) authorizing the Borrowers and Guarantors to execute and enter into the DIP Facility Documents and to perform such other and further acts as may be required in connection with the DIP Facility Documents;

(3) requesting, pursuant to section 364(c) and (d) of the Bankruptcy Code, that the claim for repayment of the DIP Obligations:

a. subject to the Carve-Out (as defined herein) and the adequate protection claims, the payment of which is secured by the Prepetition ABL Lenders' Replacement Liens (as defined herein), have priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 and/or 1114 of the Bankruptcy Code and all administrative claims granted pursuant to an order of the Bankruptcy Court, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, whether incurred in the Cases or any successor case, which allowed super-priority claim of the Administrative Agents and DIP Facility Lenders shall be payable from and have recourse to all prepetition and postpetition property of the Debtors, as provided for herein (the "DIP Facility Superpriority Claim"); and

b. be and be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable first-priority senior priming security

3

interests in and liens upon (collectively, the "DIP Facility Liens") all prepetition and postpetition assets of the Debtors and Guarantors, whether now existing or hereafter acquired, and to the extent not otherwise included, all proceeds, commercial tort claims, insurance claims (as to insurance claims, to the extent of the Debtors' interest therein) and other rights to payments not otherwise included in the foregoing assets and all products of the foregoing assets and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing assets, including, without limitation, and solely upon approval and entry of the Final Order, avoidance actions under Chapter 5 of the Bankruptcy Code and/or the proceeds thereof pursuant to sections 502(d), 544, 545, 547, 548, 550 and/or 553 of the Bankruptcy Code (the "Avoidance Actions") (collectively, the "DIP Collateral"), as provided for by section 364(c) and (d) of the Bankruptcy Code, subject only to (i) the Carve-Out, (ii) the Prepetition Permitted Liens (as defined herein) and (iii) the Prepetition ABL Lenders' Replacement Liens (as defined herein);

(4)     seeking the Bankruptcy Court's authorization pursuant to sections 361(a) and 363(c) of the Bankruptcy Code to authorize the Debtors' use of cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code) constituting Prepetition Collateral (as defined herein) (as so defined, the "Cash Collateral"), on the terms and conditions set forth in this Interim Order and in the DIP Facility Agreement (as defined herein);

(5)     seeking the Bankruptcy Court's authorization of the Debtors' grant of adequate protection replacement liens, claims and security interests to the (i) Prepetition ABL Agent and Prepetition ABL Lenders (collectively, the "Prepetition ABL Loan Secured Parties") as provided in this Interim Order and DIP Facility Agreement, (ii) Prepetition First Lien Term Loan Administrative Agent and the Prepetition First Lien Term Loan Lenders (collectively, the "Prepetition First Lien Term Loan Secured Parties") as provided in this Interim Order and DIP

4

Facility Agreement, and (iii) Prepetition Second Lien Term Loan Administrative Agent and the Prepetition Second Lien Term Loan Lenders (collectively, the "Prepetition Second Lien Term Loan Secured Parties" and, together with the Prepetition ABL Loan Secured Parties and Prepetition First Lien Term Loan Secured Parties, the "Prepetition Secured Parties") as provided in this Interim Order and DIP Facility Agreement;

(6)     seeking the Bankruptcy Court's authorization for the Borrowers to use a portion of the proceeds from the Tranche A Facility (as defined herein) upon and following entry of this Interim Order (i) to pay in full, in cash, as a condition to closing the DIP Facility, the (a) Prepetition ABL Loans (as defined herein), subject to paragraph 11 below, and (b) Prepetition ABL Agreement Expenses (as defined herein), whether incurred prior or subsequent to the Petition Date and as and when and in the manner due under the Prepetition ABL Loan Documents; (ii) if necessary, to provide cash collateral for the repayment of the Borrowers' and/or the Guarantors' obligations under or with respect to letters of credit issued and outstanding as of the Petition Date (as defined herein) under the Prepetition ABL Loan Documents (the "Prepetition Letters of Credit") in an amount equal to 105% of the face amount of such Prepetition Letters of Credit (the "Prepetition Letter of Credit Obligations"); and (iii) for such other uses as are approved under this Interim Order;

(7)     seeking the Bankruptcy Court's authorization for the Borrowers to use a portion of the proceeds from the DIP Facility upon and following entry of this Interim Order to (i) make adequate protection payments as provided for in this Interim Order (collectively, the "Adequate Protection Obligations") to the Prepetition ABL Loan Secured Parties, the Prepetition First Lien Term Loan Secured Parties, and the Prepetition Second Lien Term Loan Secured Parties; (ii) pay certain transaction fees and other costs and administrative expenses for goods

5

and services in the ordinary course of business (other than fees and expenses of professional persons) to the extent set forth in the budget attached as Exhibit 1 to the DIP Facility Agreement (the "Budget"); (iii) fund, among other things, ongoing working capital, general corporate financing, letters of credit and other financing needs of the Debtors to the extent set forth in the Budget; (iv) pay amounts owing to the DIP Facility Agents and the DIP Facility Lenders under the DIP Facility, including, but not limited to, fees and expenses (including reasonable attorneys' fees and expenses) owed to the DIP Facility Agents and the DIP Facility Lenders; and (v) prior to an event of default under the DIP Facility, pay fees and expenses of professionals retained pursuant to sections 327, 328 or 1103 of the Bankruptcy Code by the Borrowers or the Committee (as defined herein), subject to the amounts set forth for each such professional in the Budget (except with respect to the Debtors' lead and local Delaware bankruptcy counsel, who, for the avoidance of doubt, will not be subject to the Budget) and subject to such carve-outs and other agreements as may be agreed to by the Administrative Agents, to the extent such professional fees and expenses are approved by the Bankruptcy Court;

(8)     requesting, pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before the Bankruptcy Court to consider entry of the Interim Order authorizing the Debtors, on an interim basis, to use Cash Collateral and obtain interim financing in the principal amount of $135,000,000 under the DIP Facility from the Administrative Agents and DIP Facility Lenders; and

(9)     requesting, pursuant to Bankruptcy Rule 4001, that a final hearing (the "Final Hearing") be held before the Bankruptcy Court to consider entry of a Final Order authorizing the balance of the borrowings and letter of credit issuances under the DIP Facility Documents on a final basis and approval of notice and the grant of adequate protection to the

6

Prepetition ABL Loan Secured Parties, Prepetition First Lien Term Loan Secured Parties and Prepetition Second Lien Term Loan Secured Parties as provided for in this Interim Order, all on a final basis, as set forth in the Motion.

Pursuant to Bankruptcy Rules 4001(b) and 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the Interim Hearing having been provided by the Debtors as set forth in paragraph I below; and the Interim Hearing having been held on January 19, 2011; and upon consideration of all the pleadings filed with the Bankruptcy Court; and upon the record made by the Debtors at the Interim Hearing and in the Declaration of T. Neale Attenborough in Support of First Day Pleadings (the "First Day Declaration"); and it appearing that approval of the Interim Order is necessary to avoid immediate and irreparable harm pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtors, their estates and all parties in interest and is essential for the continued operations of the Debtors' businesses; and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.    On January 19, 2011 (the "Petition Date"), the Debtors commenced the Cases in the Bankruptcy Court. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    Concurrently with the filing of the Motion, the Debtors filed a motion seeking joint administration of the Cases. No request for the appointment of a trustee or examiner has been made in the Cases. No committee has been appointed or designated in the Cases.

7

C. The Bankruptcy Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D. Without prejudice to the rights of any non-debtor party in interest as provided in paragraph 11 herein, the Debtors acknowledge, agree and stipulate that:

(i) Pursuant to that certain Credit Agreement, dated as of April 30, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition ABL Credit Agreement" and together with all "Loan Documents" (as defined in the Prepetition ABL Credit Agreement) and all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition ABL Loan Documents"), UBS AG Stamford Branch, as administrative agent (the "Prepetition ABL Agent"), the Collateral Agents and the Issuing Bank and lenders under the Prepetition ABL Credit Agreement (the "Prepetition ABL Lenders"), made loans and advances to, issued letters of credit for and/or provided other financial accommodations to or for the benefit of the Borrowers from time to time in a principal amount of up to $125,000,000 (collectively, the "Prepetition ABL Loans"). The Prepetition ABL Loan Documents, the Prepetition First Lien Term Loan Documents, Prepetition Second Lien Term Loan Documents and Intercreditor Agreement (each as defined herein), in each case as the same may be amended, modified and/or supplemented from time to time in accordance with the terms thereof, are collectively referred to herein as the "Prepetition Credit Documents." All obligations of the Debtors arising under the Prepetition Credit Documents whether incurred prepetition or postpetition, including all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including, without limitation, any and all attorneys', accountants', appraisers' and

8

financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Credit Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Secured Parties (as defined herein) by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and whether or not contingent or otherwise, and specifically including the Prepetition ABL Loan Indebtedness, Prepetition First Lien Term Loan Indebtedness and Prepetition Second Lien Term Loan Indebtedness (each as defined herein), shall hereinafter be referred to as the "Prepetition Obligations";

(ii)     Pursuant to the Prepetition ABL Loan Documents, the Debtors were, as of the Petition Date, jointly and severally indebted to the Prepetition ABL Loan Secured Parties on account of the Prepetition ABL Loan Indebtedness (as defined herein), inclusive of accrued but unpaid interest, costs, fees and expenses, in the approximate amount of $[  $348.6 million (plus accrued but unpaid reimbursable fees, costs and expenses) ] including (x) the Prepetition ABL Loans, (y) the Prepetition Letter of Credit Obligations, and (z) all accrued but unpaid interest, fees, costs and expenses incurred by the Prepetition ABL Loan Secured Parties and the Collateral Agents under the Prepetition ABL Credit Agreement or any other related loan document and all indemnification rights or claims they have or may have under the Prepetition ABL Credit Agreement or any other related loan documents (all such interest, fees, costs, expenses and indemnification rights or claims, the "Prepetition ABL Agreement Expenses" and, together with the Prepetition ABL Loans and the Prepetition Letter of Credit Obligations, the "Prepetition ABL Loan Indebtedness"). For purposes of this Interim Order, all Prepetition ABL Agreement Expenses consisting of indemnification rights or claims on account of a successful challenge (if any) with respect to principal, interest, unused line fees or letters of credit fees paid under the Prepetition Credit Documents shall be referred to as the

9

"Subject Prepetition ABL Agreement Expenses". For purposes of this Interim Order, the term "Prepetition ABL Loan Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition ABL Loan Documents (including, without limitation, all "Obligations" as defined in the Prepetition ABL Credit Agreement), whether incurred prepetition or postpetition, including all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including, without limitation, any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition ABL Loan Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition ABL Loan Secured Parties by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and whether or not contingent or otherwise;

(iii)     Pursuant to the Prepetition ABL Loan Documents, including, without limitation, that certain Security Agreement, dated as of April 30, 2007, and entered into by and among the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, the Borrowers and each other party signatory thereto (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition ABL Security Agreement") granted to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, to secure the Borrowers' obligations under the Prepetition ABL Loan Documents, a security interest in and continuing lien on the Prepetition Collateral (as defined herein). All collateral granted or pledged by the Debtors pursuant to the Prepetition ABL Loan Documents, the Prepetition First Lien Term Loan Documents (as defined herein) and the Prepetition Second Lien Term Loan Documents (as defined herein), including the ABL Priority Collateral and the

10

Term Loan Priority Collateral (as such terms are defined in the Intercreditor Agreement), shall collectively be referred to herein as the "Prepetition Collateral";

(iv)     Pursuant to that certain Prepetition First Lien Term Loan Credit Agreement, dated as of April 30, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition First Lien Term Loan Credit Agreement" and together with all "Loan Documents" (as defined in the Prepetition First Lien Term Loan Credit Agreement) and all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition First Lien Term Loan Documents"), the agent (the "Prepetition First Lien Term Loan Administrative Agent") and the lenders under the Prepetition First Lien Term Loan Credit Agreement (collectively, the "Prepetition First Lien Term Loan Lenders") agreed to extend term loans to the Borrowers from time to time in an amount of $335,000,000;

(v)      Pursuant to the Prepetition First Lien Term Loan Documents, the Debtors were, as of the Petition Date, jointly and severally indebted to the Prepetition First Lien Term Loan Secured Parties on account of the Prepetition First Lien Term Loan Indebtedness (as defined herein), inclusive of accrued but unpaid interest, costs, fees and expenses, in the approximate principal amount of $[ 7324 million ].  For purposes of this Interim Order, the term "Prepetition First Lien Term Loan Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition First Lien Term Loan Documents (including, without limitation, all "Obligations" as defined in the Prepetition First Lien Term Loan Credit Agreement) whether incurred prepetition or postpetition, including all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including, without limitation, any and all attorneys', accountants', appraisers'

11

and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition First Lien Term Loan Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition First Lien Term Loan Secured Parties by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and whether or not contingent or otherwise;

(vi) Pursuant to the Prepetition First Lien Term Loan Documents, including, without limitation, that certain Security Agreement, dated as of April 30, 2007, and entered into by and among the Prepetition First Lien Term Loan Administrative Agent, for the benefit of itself and the Prepetition First Lien Term Loan Lenders, the Borrowers and each other party signatory thereto (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition First Lien Security Agreement") granted to the Prepetition First Lien Term Loan Administrative Agent, for the benefit of itself and the Prepetition First Lien Term Loan Lenders, to secure the Borrowers' obligations under the Prepetition First Lien Term Loan Documents, a security interest in and lien on the Prepetition Collateral;

(vii) Pursuant to that certain Note Purchase Agreement, dated as of April 30, 2007 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Second Lien Term Loan Credit Agreement" and together with all "Note Documents" (as defined in the Prepetition Second Lien Term Loan Credit Agreement) and all other agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Second Lien Term Loan Documents"), the agent (the "Prepetition Second Lien Term Loan Administrative Agent") and the lenders under the Prepetition Second Lien Term Loan Credit Agreement (collectively, the "Prepetition Second

12

Lien Term Loan Lenders") purchased the Notes (as defined in the Prepetition Second Lien Term Loan Credit Agreement) in an aggregate principal amount of $250,000,000;

(viii)  Pursuant to the Prepetition Second Lien Term Loan Documents, the Debtors were, as of the Petition Date, jointly and severally indebted to the Prepetition Second Lien Term Loan Secured Parties on account of the Prepetition Second Lien Term Loan Indebtedness (as defined herein), inclusive of accrued but unpaid interest, costs, fees and expenses, in the approximate amount of $[ 291.2 million ]. For purposes of this Interim Order, the term "Prepetition Second Lien Term Loan Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition Second Lien Term Loan Documents (including, without limitation, all "Obligations" as defined in the Prepetition Second Lien Term Loan Credit Agreement) whether incurred prepetition or postpetition, including all loans, advances, debts, liabilities, principal, accrued or hereafter accruing interest, fees, costs, charges, expenses (including, without limitation, any and all attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable, reimbursable or otherwise payable under the Prepetition Second Lien Term Loan Documents) and obligations for the performance of covenants, tasks or duties, or for the payment of monetary amounts owing to the Prepetition Second Lien Term Loan Secured Parties by the Debtors, of any kind or nature, whether or not evidenced by any note, agreement or other instrument, and whether or not contingent or otherwise;

(ix)  Pursuant to the Prepetition Second Lien Term Loan Documents, including, without limitation, that certain Security Agreement, dated as of April 30, 2007, and entered into by and among the Prepetition Second Lien Term Loan Administrative Agent, for the benefit of itself and the Prepetition Second Lien Term Loan Lenders, the Borrowers and each

13

other party signatory thereto (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Second Lien Security Agreement"), granted to the Prepetition Second Lien Term Loan Administrative Agent, for the benefit of itself and the Prepetition Second Lien Term Loan Lenders, to secure the Borrowers' obligations under the Prepetition Second Lien Term Loan Documents, a security interest in and lien on the Prepetition Collateral;

(x)     As of the Petition Date and immediately prior to giving effect to this Interim Order, (a) the Prepetition ABL Loan Documents, Prepetition First Lien Term Loan Documents, and Prepetition Second Lien Term Loan Documents are valid and binding agreements and obligations of the Debtors, and the Liens (as defined in the Intercreditor Agreement) granted pursuant to the Prepetition ABL Loan Documents, Prepetition First Lien Term Loan Documents, and the Prepetition Second Lien Term Loan Documents (i) constitute valid, binding, enforceable and perfected security interests and Liens, subject only to the Liens permitted under the Prepetition Credit Documents, but only to the extent such permitted Liens are valid, enforceable, non-avoidable Liens and security interests that are perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Liens of the Prepetition ABL Loan Secured Parties in the ABL Priority Collateral as of the Petition Date (as applicable, the "Senior Prepetition ABL Permitted Liens") or the Liens of the Prepetition First Lien Term Loan Secured Parties in the Term Loan Priority Collateral as of the Petition Date (as applicable, the "Senior Prepetition Term Loan Permitted Liens") granted pursuant to the Prepetition Credit Documents and under applicable law and after giving effect to any applicable subordination or intercreditor agreements (such liens, collectively,

14

the "Prepetition Permitted Liens"); provided, however, that notwithstanding the foregoing, the Prepetition Permitted Liens shall not include the Liens of the Prepetition Secured Parties in the Prepetition Collateral; and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (b) the Prepetition ABL Loan Indebtedness constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with its terms and (i) no objection, offset, defense or counterclaim of any kind or nature to the Prepetition ABL Loan Indebtedness exists, (ii) the Prepetition ABL Loan Indebtedness, and any amounts paid at any time to the Prepetition ABL Agent on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (c) the Prepetition First Lien Term Loan Indebtedness constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms and (i) no objection, offset, defense or counterclaim of any kind or nature to the Prepetition First Lien Term Loan Indebtedness exists, and (ii) the Prepetition First Lien Term Loan Indebtedness, and any amounts paid at any time to the Prepetition First Lien Term Loan Administrative Agent on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (d) the Prepetition Second Lien Term Loan Indebtedness constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms and (i) no objection, offset, defense or counterclaim of any kind or nature to the Prepetition Second Lien Term Loan Indebtedness exists, and (ii) the Prepetition Second Lien Term Loan Indebtedness, and any amounts paid at any time to the Prepetition Second Lien Term Loan Administrative Agent on account thereof or with respect thereto, are not

15

subject to avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(xi)     The Debtors have waived, discharged and released any right they may have to challenge any of the Prepetition ABL Loan Indebtedness, Prepetition First Lien Term Loan Indebtedness, or Prepetition Second Lien Term Loan Indebtedness and the security for those obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition ABL Agent, Prepetition ABL Lenders, Prepetition First Lien Term Loan Administrative Agent, Prepetition First Lien Term Loan Lenders, Prepetition Second Lien Term Loan Administrative Agent, Prepetition Second Lien Term Loan Lenders and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees and no portion of the Prepetition ABL Loan Indebtedness, Prepetition First Lien Term Loan Indebtedness, or Prepetition Second Lien Term Loan Indebtedness is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law. The Debtors irrevocably waive any right to challenge or contest such Liens of the Prepetition ABL Loan Secured Parties, the Prepetition First Lien Term Loan Secured Parties, and the Prepetition Second Lien Term Loan Secured Parties in the Prepetition Collateral or the validity of the Prepetition Obligations as to the Prepetition ABL Loan Secured Parties, the Prepetition First Lien Term Loan Secured Parties, or the Prepetition Second Lien Term Loan Secured Parties;

(xii)     As of the Petition Date, the Prepetition Obligations for which the Debtors were truly and justly indebted to the Prepetition ABL Loan Secured Parties, without

16

_(plus accrued but unpaid reimbursable fees, costs and expenses)_

defense, counterclaim or offset of any kind, aggregated not less than approximately $[_747.6_] million;

        (xiii)    The value of the Prepetition Collateral granted or pledged to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, pursuant to the Prepetition Credit Documents is equal to or greater than the amount of the Prepetition ABL Loan Indebtedness and the value of the ABL Priority Collateral granted or pledged to the Prepetition ABL Agent, for the benefit of itself and the Prepetition ABL Lenders, pursuant to the Prepetition Credit Documents is equal to or greater than the amount of the Prepetition ABL Loan Indebtedness; the Debtors make no acknowledgement, agreement or stipulation, and shall not be deemed to have made any acknowledgement, agreement or stipulation, as to the value of the Prepetition Collateral and/or the Term Priority Collateral in relation to the amount of the Prepetition First Lien Term Loan Indebtedness and/or the Prepetition Second Lien Term Loan Indebtedness; and

        (xiv)    The claims arising from or in connection with the Prepetition ABL Loan Indebtedness, the Prepetition First Lien Term Loan Indebtedness, and the Prepetition Second Lien Term Loan Indebtedness are "allowed claims" within the meaning of section 502 of the Bankruptcy Code.

        E.    Pursuant to that certain Intercreditor Agreement, dated as of April 30, 2007 (as amended, restated, supplemented or otherwise modified prior to the Petition Date, the "Intercreditor Agreement"), the Prepetition ABL Agent, Prepetition First Lien Term Loan Administrative Agent and Prepetition Second Lien Term Loan Administrative Agent, inter alia, are parties to an intercreditor arrangement that governs the respective rights, obligations and priorities of the Prepetition ABL Lenders, Prepetition First Lien Term Loan Lenders and

17

Prepetition Second Lien Term Loan Lenders with respect to their interests in the Prepetition Collateral. The parties to the Intercreditor Agreement have advised the Bankruptcy Court that they each consent to the relief contained herein. The Replacement Liens (as defined herein) granted herein to each of the Prepetition ABL Loan Secured Parties, Prepetition First Lien Term Loan Secured Parties and Prepetition Second Lien Term Loan Secured Parties shall have the respective priority positions in the Prepetition Collateral and the DIP Collateral as set forth in this Interim Order.

      F.      The Debtors' businesses have an immediate need to obtain the DIP Facility and use Cash Collateral in order to have adequate liquidity to provide for, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational, financial and general corporate needs. The immediate availability of credit under the DIP Facility is intended to provide confidence to the Debtors' creditors, including their trade vendors and foreign creditors, and the Debtors' employees that will enable and encourage them to continue their relationships with the Debtors and, thereby, is intended to enhance the value of the Debtors' estates. The access of the Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations (including letters of credit and other credit support) and use of Cash Collateral is vital to the preservation and maintenance of the going concern values of the Debtors and to the success of these Cases. Without such credit and use of Cash Collateral, the Debtors' estates would be irreparably harmed.

      G.      The Debtors are unable to obtain sufficient financing from sources other than the DIP Facility Lenders on terms more favorable than under the DIP Facility and all the

documents, exhibits, schedules and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Facility Agreement, the "DIP Facility Documents"). The Debtors have been unable to obtain sufficient unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense. New credit is unavailable to the Debtors without (i) providing (a) the Administrative Agents, for the benefit of themselves and the DIP Facility Lenders, the DIP Facility Superpriority Claims as provided herein and in the DIP Facility Documents and (b) the Tranche A Administrative Agent, for the benefit of the Administrative Agents and DIP Lenders, the DIP Facility Liens as provided herein and in the DIP Facility Documents and (ii) concurrently providing for the adequate protection to the (a) Prepetition ABL Loan Secured Parties on the terms and conditions as set forth herein, (b) Prepetition First Lien Term Loan Secured Parties on the terms and conditions as set forth herein, and (c) Prepetition Second Lien Term Loan Secured Parties on the terms and conditions as set forth herein.

H.      The Administrative Agents, DIP Facility Lenders and Prepetition Secured Parties have agreed and consented to, or not opposed, as applicable, the provision of financing to the Debtors and the use of Cash Collateral by the Debtors subject to (i) the entry of this Interim Order, (ii) the terms and conditions of the DIP Facility Agreement, and (iii) findings by the Bankruptcy Court that such postpetition financing and use of Cash Collateral is essential to the Debtors' estates, that the terms of such financing and use of Cash Collateral were negotiated in good faith and at arm's length, and that the DIP Facility Liens and DIP Facility Superpriority Claims, and other protections granted pursuant to this Interim Order and the DIP Facility Documents will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

19

Each of the DIP Facility Agents, DIP Facility Lenders, Prepetition ABL Agent, Prepetition ABL Lenders, Prepetition First Lien Term Loan Administrative Agent, Prepetition First Lien Term Loan Lenders, Prepetition Second Lien Term Loan Administrative Agent and Prepetition Second Lien Term Loan Lenders have acted in good faith in, as applicable, negotiating, consenting to and in agreeing to provide the postpetition financing arrangements and use of Cash Collateral (or otherwise not opposing such use) contemplated by this Interim Order and the other DIP Facility Documents and the reliance of each of the DIP Facility Agents, DIP Facility Lenders, Prepetition ABL Agent, Prepetition ABL Lenders, Prepetition First Lien Term Loan Administrative Agent, Prepetition First Lien Term Loan Lenders, Prepetition Second Lien Term Loan Administrative Agent and Prepetition Second Lien Term Loan Lenders on the assurances referred to above is in good faith.

I.    Telephonic, facsimile notice, electronic mail or overnight mail notice of the Interim Hearing and the proposed entry of this Interim Order has been provided to (i) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"); (ii) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), (iii) counsel to the respective Administrative Agents, (iv) counsel to the Prepetition ABL Agent, (v) counsel to the Prepetition First Lien Term Loan Administrative Agent, (vi) counsel to the Prepetition Second Lien Term Loan Administrative Agent, (vii) each of the financial institutions identified on the chart annexed as Exhibit 1 to Exhibit A in the Debtors' motion to continue use of their cash management system,[3] (viii) all

---

[3] Debtors' Motion For Entry Of An Order Authorizing Debtors To (A) Continue To Operate Their Cash Management System; (B) Maintain Existing Business Forms; (C) Grant Administrative Priority For Intercompany Claims And Perform Under Certain Intercompany Arrangements And Historical Practices; And (D) Assume And Assign Certain Account Control Agreements Pursuant To Section 365 Of The Bankruptcy Code, dated January 19, 2011 (Docket No. 7)

20

known parties asserting a lien against the Prepetition Collateral, (ix) the Internal Revenue Service, (x) the Delaware Secretary of State, (xi) the Delaware Secretary of Treasury, (xii) the Delaware State Attorney General, (xiii) the Office of the United States Attorney General for the State of Delaware, (xiv) the Securities and Exchange Commission, (xv) the Pension Benefit Guaranty Corporation, (xvi) the United States Environmental Protection Agency, (xvii) any applicable state environmental agency, and (xviii) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules, ((i) through (xviii), the "Notice Parties"). The requisite notice of the Motion and the relief requested thereby and this Interim Order has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Interim Order.

J.      The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b) (2) and 4001(c) (2). Absent entry of this Interim Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed.

K.      The ability of the Debtors to finance their respective operations and the availability to the Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, including letters of credit and credit support, and use of Cash Collateral is in the best interests of the Debtors and their respective creditors and estates. The interim financing and use of Cash Collateral authorized hereunder is necessary to avoid immediate irreparable harm to the Debtors' businesses, properties and estates and to allow the orderly continuation of the Debtors' businesses.

21

L.    Based on the record presented by the Debtors to the Bankruptcy Court and the First Day Declaration: (i) the terms of the DIP Facility and use of Cash Collateral are the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility and use of Cash Collateral has been negotiated in good faith and at arm's length among the Debtors and the Administrative Agents, DIP Facility Lenders, Prepetition Secured Parties, and any credit extended, letters of credit issued, loans made, credit support provided and other financial accommodations extended to the Debtors by the DIP Facility Lenders and use of Cash Collateral by the Debtors shall be deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

M.    None of the Prepetition Secured Parties have opposed the terms and conditions of this Interim Order, including the priming under section 364(d) of the Bankruptcy Code as provided for herein. The consent of the Prepetition ABL Loan Secured Parties, Prepetition First Lien Term Loan Secured Parties and Prepetition Second Lien Term Loan Secured Parties granted herein is expressly limited to (i) the Debtors' use of Cash Collateral solely on the terms and conditions set forth in this Interim Order and (ii) the postpetition financing being provided by the Administrative Agents and DIP Facility Lenders as contemplated by this Interim Order and the DIP Facility Agreement. Nothing in this Interim Order, including, without limitation, any of the provisions herein with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Prepetition Secured Parties are or will be adequately protected with respect to any non-consensual use of Cash Collateral.

22

N.    The security interests and liens granted pursuant to this Interim Order to the Tranche A Administrative Agent, for the benefit of each Administrative Agent and the DIP Facility Lenders, are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (i) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates, (ii) the holders of such valid, perfected, prepetition security interests and liens have consented to the security interests and priming liens granted pursuant to this Interim Order to the Tranche A Administrative Agent, for the benefit of each Administrative Agent and the DIP Facility Lenders, and/or (iii) the interests of any holder of a valid, perfected, prepetition security interest or lien are otherwise adequately protected.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.    Disposition.  The Motion is granted as set forth in this Interim Order.  Any objections to the Motion that have not previously been resolved or withdrawn are hereby overruled.  This Interim Order shall immediately become effective upon its entry.  To the extent that the terms of the DIP Facility Documents differ from the terms of this Interim Order, this Interim Order shall control.

2.    Authorization to Borrow.  Upon execution and delivery of that certain Senior Secured and Super Priority Debtor-in-Possession Credit Agreement (the "DIP Facility Agreement") by and among the Borrowers, the Guarantors, the DIP Facility Agents and the DIP Facility Lenders, in substantially the form annexed to the Motion and provided that the Debtors are not in default under the terms of this Interim Order, the Debtors are immediately authorized to borrow (and receive other extensions of credit) under the DIP Facility from the DIP Facility Lenders up to $135,000,000 (together with interest, fees, charges and expenses payable under the

23

DIP Facility Documents) and each Prepetition Letter of Credit is deemed to be issued under the DIP Facility Agreement, pursuant to the terms and conditions of the DIP Facility Agreement. The Debtors are authorized and directed to use such DIP Loans (as defined herein) in accordance with the terms of Section 3.12 of the DIP Facility Agreement and this Interim Order. Upon execution and delivery of the DIP Facility Documents, the DIP Facility Documents shall constitute legal, valid and binding obligations of the Debtors and Guarantors party thereto, enforceable against the Debtors and Guarantors in accordance with their terms.

3. <u>Structure of DIP Facility</u>. The DIP Facility in the maximum principal amount of $140,000,000 shall be comprised of (i) a senior secured first-out revolving credit tranche (the "<u>Tranche A Facility</u>") in the principal amount of $100,000,000, which includes (A) a letter of credit subfacility in the amount of up to $30,000,000 to be provided by the Issuing Bank and (B) a swing line subfacility of up to $20,000,000, to be provided by the Swingline Lender; and (ii) a senior secured last-out revolving credit tranche in the principal amount of $35,000,000 (the "<u>Initial Tranche B Facility</u>") to be funded upon the closing of the Tranche A Facility and $5,000,000 to be funded subject to the conditions set forth in the DIP Facility Agreement (the "<u>Delayed Draw Tranche B Facility</u>" and, together with the Initial Tranche B Facility, the "<u>Tranche B Facility</u>"). The aggregate principal amount of the DIP Loans (as defined herein) available under the DIP Facility shall not exceed $140,000,000, <u>provided</u>, <u>however</u>, that the aggregate principal amount of the DIP Loans available under the DIP Facility from time to time prior to the Maturity Date (as defined in the DIP Facility Agreement) shall be subject to Borrowing Base limitations, availability criteria and other terms, including Reserves (including in respect of a letter of credit sub-facility and swing line loans, as noted above), all as set forth in the DIP Facility Agreement. Pursuant to the DIP Facility Agreement, (i) the full

24

amount of the Initial Tranche B Facility will be funded as a condition precedent to funding of the Tranche A Facility and (ii) none of the outstanding principal balance of the Tranche B Facility may be paid until all obligations due in respect of the Tranche A Facility have been paid in full, in cash, (including, but not limited to, the deposit of cash collateral with the Tranche A Administrative Agent equal to 105% of the aggregate undrawn amount of all letters of credit outstanding thereunder) and the Tranche A Revolving Commitment (as defined in the DIP Facility Agreement) has been permanently terminated and reduced to zero.

4.      DIP Facility Proceeds.  (a) Subject to the terms and conditions contained in this Interim Order and the DIP Facility Agreement and as and for, *inter alia*, adequate protection, upon entry of this Interim Order and the closing of transactions contemplated under the DIP Facility Agreement, (i) the Debtors shall use all cash held by the Debtors or held by the Prepetition ABL Agent from proceeds of Prepetition Collateral as of the Petition Date and the first proceeds of the initial draw under the DIP Facility to pay in full, in cash, all outstanding Prepetition ABL Loan Indebtedness including, without limitation, the Prepetition ABL Loans and Prepetition ABL Agreement Expenses, subject to paragraph 11 below, and (ii) all Prepetition Letters of Credit outstanding under the Prepetition ABL Credit Agreement shall be automatically deemed to have been issued under the Tranche A Facility and to constitute DIP Obligations, paragraph 11 below.

(b) After the payment of the Prepetition ABL Loan Indebtedness, all proceeds of DIP Collateral (whether or not included in the Borrowing Base) collected after the Closing Date (including after an Event of Default) and all voluntary or mandatory payments made by the Debtors, as required or permitted pursuant to the DIP Facility Agreement in accordance with the terms of the DIP Facility Agreement shall be applied to the DIP Obligations (as defined herein)

25

PHIL1 1356881-1

pursuant to the terms of the DIP Facility Agreement. Subject to the terms and conditions of this Interim Order, the Prepetition ABL Loan Secured Parties' claims on account of the Prepetition ABL Loan Indebtedness shall be allowed pursuant to section 502 of the Bankruptcy Code, and no Prepetition ABL Loan Secured Party shall be required to file a proof of claim with respect to any such claim.

5.    <u>Continuation of Liens and Liens Securing DIP Obligations</u>.   Until payment in full, in cash, of all of the obligations of the Debtors with respect to the DIP Facility and the Prepetition ABL Loan Documents, and termination of the DIP Facility Lenders' commitments under the DIP Facility, and until such time as the Prepetition ABL Loan Indebtedness shall have been allowed in full and the time period for any challenge thereto shall have expired, all liens and security interests of the Prepetition ABL Agent and Prepetition ABL Lenders (including, without limitation, liens granted for adequate protection purposes) shall remain valid and enforceable with the same continuing priority as described herein. Notwithstanding any payment of all or any portion of the Prepetition ABL Loan Indebtedness, the Liens arising under the Prepetition ABL Loan Documents shall continue in full force and effect and shall, and shall be deemed to, secure the full and timely payment of the DIP Obligations (separate from and in addition to the DIP Facility Liens granted to the Tranche A Administrative Agent, for the benefit of the Administrative Agents and the DIP Facility Lenders, in Paragraph 7 below) until the payment in full, in cash, of all of the DIP Obligations and the termination of the DIP Facility Lenders' commitments under the DIP Facility.

6.    <u>DIP Loans</u>. All loans and letters of credit made to or for the benefit of the Debtors on or after the Petition Date under the DIP Facility Documents (collectively, the "<u>DIP Loans</u>"), including defined term "Obligations" without limitation, principal, interest, fees, costs,

26

expenses, indemnification obligations and other obligations and amounts due from time to time by the Debtors to the DIP Facility Agents and the DIP Facility Lenders under the DIP Facility Documents and this Interim Order, shall hereinafter be referred to as the "DIP Obligations." The DIP Loans and the DIP Obligations: (i) shall be evidenced by the books and records of the Administrative Agents or the DIP Facility Lenders; (ii) shall bear interest payable at the rates set forth in the DIP Facility Agreement; (iii) shall be secured in the manner specified in paragraph 7 below; (iv) shall be payable in accordance with the terms of the DIP Facility Documents; and (v) shall otherwise be governed by the terms set forth herein and in the DIP Facility Documents.

7.      DIP Facility Liens.  As security for the repayment of the DIP Obligations, pursuant to sections 364(c)(2), (c)(3) and (d) of the Bankruptcy Code, the Tranche A Administrative Agent, on behalf of the Administrative Agents and the DIP Facility Lenders, are hereby granted (without the necessity of the execution by the Debtors or the filing or recordation of mortgages, security agreements, lock box agreements, financing statements or otherwise) the DIP Facility Liens on and in the DIP Collateral and all proceeds thereof (subject to the Carve-Out and the adequate protection claims the payment of which is secured by the Prepetition ABL Lenders' Replacement Liens (as defined herein)), which liens are valid, binding, enforceable and fully perfected as of the date hereof, not subject to subordination, impairment or avoidance, for all purposes in the Cases and any successor case.[4]  Except as set forth herein, the DIP Facility Liens granted herein shall prime and be senior in all respects to the Liens arising under the Prepetition Credit Documents, the First Lien Term Loan Lenders' Replacement Liens (as defined herein) and Second Lien Term Loan Lenders' Replacement Liens (as defined herein) pursuant to

---

[4] The Tranche A Administrative Agent is, in accordance with the terms set forth in the DIP Facility Agreement, appointed as the recipient and holder of the DIP Facility Liens for the benefit of the Tranche A Administrative Agent, the Tranche B Administrative Agent and the DIP Lenders.

27

section 364(d) of the Bankruptcy Code, and, upon entry of this Interim Order, all possessory collateral held by the Prepetition Secured Parties shall be deemed to have been transferred to the Tranche A Administrative Agent and all lockbox, blocked account and similar agreements shall be deemed assigned to the Tranche A Administrative Agent, on behalf of the Administrative Agents and DIP Facility Lenders, as security for the DIP Obligations. Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Facility Liens shall be junior only to (x) the Senior Prepetition ABL Permitted Liens with respect to the ABL Priority Collateral and Senior Prepetition Term Loan Permitted Liens with respect to the Term Loan Priority Collateral and (y) the Prepetition ABL Lenders' Replacement Liens (as defined herein) other than to the extent that they secure the payment of Subject Prepetition ABL Agreement Expenses. The DIP Facility Liens shall be senior to the Prepetition ABL Lenders' Replacement Liens to the extent that they secure the payment of Subject Prepetition ABL Agreement Expenses.

8.    <u>Administrative Agents' Relative Rights</u>.    The relative rights of the Tranche A Administrative Agent and Tranche A Lenders vis-à-vis the Tranche B Administrative Agent and Tranche B Lenders, solely in their capacity as Administrative Agents and Lenders under the DIP Facility Agreement, shall be as set forth in the DIP Facility Agreement and shall not be subject to the Intercreditor Agreement. In light of the consent of the parties to the Intercreditor Agreement, as set forth in paragraph E herein, the Intercreditor Agreement shall not apply to, among other things, the DIP Liens, DIP Superpriority Claim, DIP Loans, DIP Obligations and Prepetition ABL Lenders' Replacement Lien.

9.    <u>DIP Facility Superpriority Claim</u>.    For all of the DIP Obligations arising under the DIP Facility and the DIP Facility Documents, the DIP Facility Lenders and the Tranche A Administrative Agent is granted, on behalf of itself, the other agents and the DIP

28

Facility Lenders, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to (i) the Carve-Out and (ii) the adequate protection claims the payment of which is secured by the Prepetition ABL Lenders' Replacement Liens, the allowed DIP Facility Superpriority Claim, which claim shall be payable from and have recourse to, in addition to the DIP Collateral, any unencumbered prepetition or postpetition property of the Debtors whether now existing or hereafter acquired. The DIP Facility Superpriority Claim shall be deemed a legal, valid, binding, enforceable and perfected claim, not subject to subordination, impairment or avoidance, for all purposes in the Cases ~~and any successor case.~~

      10.    <u>Carve-Out</u>. Subject to the terms and conditions contained in this paragraph, the DIP Facility Liens, DIP Facility Superpriority Claim, the adequate protection liens and claims of the Prepetition Secured Parties as provided for herein and liens and claims held by the Prepetition Secured Parties shall be subject to the following: (i) unpaid fees of the Clerk of the Bankruptcy Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a); (ii) allowed (whether prior to or after the delivery of a Carve-Out Notice (as defined herein)) fees, costs and expenses for any professional retained pursuant to sections 327, 328 or 1103 of the Bankruptcy Code of the Debtors and any official committee of unsecured creditors (the "<u>Committee</u>") appointed in the Cases (other than any "success", transaction, restructuring, completion or similar fees payable to such professionals, the "<u>Professional Fees</u>") incurred at any time on or prior to the calendar day immediately following the date of the delivery of a Carve-Out Notice (as defined herein) to the extent set forth in and consistent with the Budget (except with respect to the Debtors' lead and local Delaware bankruptcy counsel, who, for the avoidance of doubt, will not be subject to the Budget); and (iii) Professional Fees incurred subsequent to the calendar day immediately following the date of delivery of the Carve-Out Notice in an aggregate amount

29

not to exceed $1,500,000 (collectively, (i)–(iii), the "Carve-Out", which shall only be for the benefit of the professionals referenced in this paragraph). "Carve-Out Notice" means written notice by the Tranche A Administrative Agent to the Debtors that the Carve-Out is invoked, which notice may be delivered only after the occurrence and during the continuation of an Event of Default under the DIP Facility, after giving effect to any applicable grace periods. Notwithstanding anything herein to the contrary, no Prepetition Collateral, DIP Collateral, proceeds thereof, or Cash Collateral, or any portion of the Carve-Out or financing provided under the DIP Facility shall include, apply to or be available for any fees or expenses incurred by any party, including the Debtors' estates or the Committee, if appointed, in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Administrative Agents or any of the DIP Facility Lenders, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization or enforceability of, or asserting any defense, counterclaim or offset to, the DIP Obligations, the Liens arising under the Prepetition ABL Loan Documents, the Liens arising under the Prepetition First Lien Term Loan Documents, the Liens arising under the Prepetition Second Lien Term Loan Documents, the DIP Facility Superpriority Claim or the security interests and DIP Facility Liens of the Tranche A Administrative Agent, for the benefit of the Administrative Agents and DIP Facility Lenders, in respect thereof, (ii) asserting any claims or causes of action (including, without limitation, claims or actions to hinder or delay the Administrative Agents' or any DIP Facility Lender's assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Facility Documents or this Interim Order or any Avoidance Actions) against the Administrative Agents, any DIP Facility Lender, the Prepetition ABL Agent, any Prepetition ABL Lender, the Prepetition First Lien Term Loan Administrative Agent, any Prepetition First

30

Lien Term Loan Lender, the Prepetition Second Lien Term Loan Administrative Agent, or any Prepetition Second Lien Term Loan Lender, (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the Prepetition ABL Loan Secured Parties, including, without limitation, challenging the amount, validity, extent, perfection, priority or enforceability of, or asserting any defense, counterclaim or offset to, the Prepetition ABL Loan Indebtedness or the ABL Loan Lien Adequate Protection granted herein, (iv) the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the Prepetition First Lien Term Loan Secured Parties, including, without limitation, challenging the amount, validity, perfection, priority or enforceability of, or asserting any defense, counterclaim or offset to, the Prepetition First Lien Term Loan Indebtedness or the First Lien Adequate Protection granted herein, or (v) the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against any of the Prepetition Second Lien Term Loan Secured Parties, including, without limitation, challenging the amount, validity, perfection, priority or enforceability of, or asserting any defense, counterclaim or offset to, the Prepetition Second Lien Term Loan Indebtedness or the Second Lien Adequate Protection granted herein. The foregoing shall not be construed as consent to the allowance of any fees and expenses referred to above and shall not affect the right of the Debtors, Administrative Agents, DIP Facility Lenders, Prepetition ABL Loan Secured Parties, Prepetition First Lien Term Loan Secured Parties, Prepetition Second Lien Term Loan Secured Parties, the Committee (if appointed), the U.S. Trustee or other parties in interest to object to the allowance and payment of such amounts. Payment of any portion of the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the DIP Facility Agents, DIP Facility Lenders, Prepetition ABL Loan Secured Parties, Prepetition First Lien Term Loan Secured

31

Parties and/or Prepetition Second Lien Term Loan Secured Parties or (ii) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral or Prepetition Collateral (or their respective claims against the Debtors). Notwithstanding anything to the contrary in this Interim Order, the Administrative Agents reserve the right to review and object to any fee statement, interim application or monthly application issued or filed by estate professionals. Notwithstanding any provision (including, without limitation, any "variance" or similar provision) of this Interim Order, any Final Order or the DIP Facility Agreement to the contrary, aggregate cumulative expenditures for restructuring professional fees of the Debtors or any Committee shall not exceed 100% of the amount with respect thereto set forth in the Budget and Professional Fees for any professional retained pursuant to sections 327, 328 or 1103 of the Bankruptcy Code (except with respect to the Debtors' lead and local Delaware bankruptcy counsel, who, for the avoidance of doubt, will not be subject to the Budget) shall not exceed 100% of the amount listed in the line item in the Budget for such Professional (except with respect to the Debtors' lead and local Delaware bankruptcy counsel, who, for the avoidance of doubt, will not be subject to the Budget).

11. <u>Investigation Rights.</u> Other than a $50,000 disbursement set forth in the Budget to investigate claims or causes of action against the Prepetition ABL Loan Secured Parties, Prepetition First Lien Term Loan Secured Parties and the Prepetition Second Lien Term Loan Secured Parties (the "<u>Investigation Funds</u>"), no portion of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral or the Carve-Out, and no disbursements set forth in the Budget, shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with asserting any claims or causes of action against the Administrative Agents, the DIP Facility Lenders, the Prepetition ABL Loan Secured Parties, the

32

Prepetition First Lien Term Loan Secured Parties, or the Prepetition Second Lien Term Loan Secured Parties, including, without limitation, any action challenging or raising any defenses to the DIP Obligations, the Prepetition ABL Loan Indebtedness, the Prepetition First Lien Term Loan Indebtedness or the Prepetition Second Lien Term Loan Indebtedness or the liens of the Prepetition ABL Loan Secured Parties, the Administrative Agents, the DIP Facility Lenders, the Prepetition First Lien Term Loan Secured Parties or the Prepetition Second Lien Term Loan Secured Parties on the Prepetition Collateral and/or DIP Collateral. Notwithstanding anything herein to the contrary, all non-debtor parties in interest (including any trustee or Committee appointed or elected in the Cases prior to the Investigation Termination Date (as defined herein)) shall have until the earlier of (x) the latter of (i) seventy-five (75) days from the date of entry of this Interim Order or (ii) sixty (60) days from the date a Committee is first appointed; or (y) the date an order is entered confirming a plan of reorganization (the "Investigation Termination Date")[5] to investigate the validity, perfection, and enforceability of the Liens of the Prepetition ABL Loan Secured Parties, the Liens of the Prepetition First Lien Term Loan Secured Parties, and the Liens of the Prepetition Second Lien Term Loan Secured Parties and the amount and allowability of the Prepetition Obligations owed to the Prepetition ABL Loan Secured Parties, the Prepetition First Lien Term Loan Secured Parties, or the Prepetition Second Lien Term Loan Secured Parties, the use of all cash held by the Debtors or held by the Prepetition ABL Agent from proceeds of Prepetition Collateral as of the Petition Date and the first proceeds of the DIP Facility to pay in full, in cash, all outstanding Prepetition ABL Loan Indebtedness including, without limitation, the Prepetition ABL Loans and Prepetition ABL Agreement Expenses as set forth in paragraph 4(a) above and to assert any claims or causes of action against any of the

---

[5] Until the occurrence of the Investigation Termination Date as set forth herein, the Debtors' stipulations and releases herein shall not be binding upon the Committee and any non-debtor parties in interest.

33

Prepetition ABL Loan Secured Parties, Prepetition First Lien Term Loan Secured Parties, or Prepetition Second Lien Term Loan Secured Parties (or to file a motion seeking standing to bring such a claim or cause of action); provided that the applicable Investigation Termination Date may be extended upon (a) the written consent of the Debtors and (i) the Prepetition ABL Agent (with the consent of the Required Lenders (as defined in the Prepetition ABL Credit Agreement)) as to any Challenge (as defined below) arising under or related to the Prepetition ABL Loan Documents, (ii) the Prepetition First Lien Term Loan Administrative Agent as to the Liens arising under the Prepetition First Lien Term Loan Documents, or (iii) the Prepetition Second Lien Term Loan Administrative Agent as to the Liens arising under the Prepetition Second Lien Term Loan Documents (each in their sole discretion) or (b) an entry of an order by the Bankruptcy Court for "cause" shown. If the Committee, if appointed, or any non-debtor party in interest hereafter vested with authority by the Bankruptcy Court, determines that there may be a challenge by the Investigation Termination Date, prior to the Investigation Termination Date, such Committee or other non-debtor party in interest hereafter vested with authority by the Bankruptcy Court must file prior to the Investigation Termination Date any objection or otherwise initiate any appropriate action or adversary proceeding (including a motion seeking standing to file such an action or prosecute such objection) on behalf of the Debtors' estates setting forth the basis of any such challenge, claim or cause of action (each, a "Challenge"). If no Challenge is filed prior to the applicable Investigation Termination Date (or such other later date as extended as provided above), then the agreements, acknowledgements, releases and stipulations contained in this Interim Order including paragraphs D(i) through D(xiv) shall be irrevocably binding on all the estates, the Committee, if appointed, and all parties in interest (including without limitation a receiver, administrator or trustee appointed in any of the Cases or

34

any successor case or in any jurisdiction) without further action by any party or the Bankruptcy Court, and the Committee and all other parties in interest (including without limitation a receiver, administrator or trustee appointed in any of the Cases or any successor case or in any jurisdiction) shall thereafter be forever estopped and barred from bringing any Challenge with respect to the Prepetition ABL Loan Secured Parties, the Prepetition First Lien Term Loan Secured Parties, and the Prepetition Second Lien Term Loan Secured Parties. If any complaint or other pleading is timely filed on or before the applicable Investigation Termination Date (or any amendment to such complaint as may be allowed thereafter), all other claims and actions against the Prepetition ABL Loan Secured Parties, the Prepetition First Lien Term Loan Secured Parties and/or Prepetition Second Lien Term Loan Secured Parties not expressly asserted in such applicable complaint, amended complaint or other pleading shall be deemed, immediately and without further notice, motion or application to, order of, or hearing before, the Bankruptcy Court, to have been forever relinquished, discharged, released and waived. Nothing in this Interim Order confers standing on any party to file or prosecute such claims and actions described herein. Notwithstanding anything herein to the contrary, if the Committee has been appointed upon entry of a Final Order, only the Committee (or any subsequently appointed trustee in these Cases) shall be entitled to seek authority to bring a Challenge on behalf of the Debtors' estates against any of the Prepetition ABL Loan Secured Parties, the Prepetition First Lien Term Loan Secured Parties and/or the Prepetition Second Lien Term Loan Secured Parties; no other party in interest shall be entitled to investigate the validity, amount, perfection, priority or enforceability of the Liens of the Prepetition ABL Loan Secured Parties as to Liens arising under the Prepetition ABL Loan Documents and Prepetition ABL Loan Indebtedness, the Liens of the Prepetition First Lien Term Loan Secured Parties as to the Liens arising under the

35

Prepetition First Lien Term Loan Documents and Prepetition First Lien Term Loan Indebtedness, and the Liens of the Prepetition Second Lien Term Loan Secured Parties as to the Liens arising under the Prepetition Second Lien Term Loan Documents and Prepetition Second Lien Term Loan Indebtedness, and the amount and allowability of the Prepetition Obligations as to the Prepetition ABL Loan Secured Parties, the Prepetition First Lien Term Loan Secured Parties or the Prepetition Second Lien Term Loan Secured Parties, or to assert any other claims or causes of action held by the Debtors' estates against any of the Prepetition ABL Loan Secured Parties, the Prepetition First Lien Term Loan Secured Parties and the Prepetition Second Lien Term Loan Secured Parties.

12.    Limitation on Additional Surcharges. Subject to entry of the Final Order, with the exception of the Carve-Out, neither the DIP Collateral, Prepetition Collateral nor any Administrative Agent, DIP Facility Lender, Prepetition ABL Loan Secured Party, Prepetition First Lien Term Loan Secured Party or Prepetition Second Lien Term Loan Secured Party shall be subject to surcharge, pursuant to sections 105, 506(c) or 552 of the Bankruptcy Code or otherwise, by the Debtors or any other party in interest without the prior written consent of the Administrative Agents, Prepetition ABL Agent, Prepetition First Lien Term Loan Administrative Agent, and/or the Prepetition Second Lien Term Loan Administrative Agent, as applicable, and no such consent shall be implied from any other action, inaction or acquiescence by such parties in this proceeding, including but not limited to funding of the Debtors' ongoing operation by the Administrative Agents and DIP Facility Lenders. The "equities of the case" exception contained in section 552(b) of the Bankruptcy Code shall be deemed waived. Upon entry of the Final Order, the Administrative Agents, DIP Facility Lenders, Prepetition ABL Loan Secured Parties, Prepetition First Lien Term Loan Secured Parties and Prepetition Second Lien Term Loan

36

Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or Prepetition Collateral.

13.     Payment of DIP Fees and Expenses.  The Debtors are hereby authorized and directed to pay on demand all fees, expenses and other amounts payable under the terms of the DIP Facility Agreement, including, without limitation, all closing fees, letter of credit fees, fronting fees, agency fees and all of the fees and all out-of-pocket costs and expenses of the DIP Facility Agents in accordance with the terms of the DIP Facility Agreement including, without limitation, the prepetition and postpetition fees and disbursements of legal counsel, local Delaware counsel, financial advisors and third-party appraisers and consultants advising each of the DIP Facility Agents (and, for the avoidance of doubt, (i) Wells Fargo, as Co-Collateral Agent, shall be entitled to reimbursement of reasonable fees and expenses for its respective separate legal counsel and local Delaware counsel, (ii) ACAS as Tranche B Disbursement Agent shall be entitled to reimbursement of reasonable fees and expenses for its respective separate legal counsel, local Delaware counsel and financial advisor, (iii) Ableco Finance LLC as Tranche B Administrative Agent shall be entitled to reimbursement of reasonable fees and expenses for its respective separate legal counsel, local Delaware counsel and financial advisor). None of such costs, fees and expenses shall be subject to Bankruptcy Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Bankruptcy Court; provided, however, that the DIP Facility Agents as well as the Prepetition ABL Agent (with respect to the adequate protection in the form of expense reimbursement granted hereunder), the Prepetition First Lien Term Loan Administrative Agent (with respect to the adequate protection in the form of expense reimbursement granted hereunder), and the Prepetition Second Lien Term Loan Administrative

37

Agent (with respect to the adequate protection in the form of expense reimbursement granted hereunder), shall independently submit summary statements of their respective professional fee invoices to the Debtors, and the Debtors shall send copies of such statements to the U.S. Trustee and any Committee within five (5) business days of their receipt thereof. In addition, the Debtors are hereby authorized to indemnify the DIP Facility Agents and the DIP Facility Lenders and certain other parties against any liability arising in connection with the DIP Facility Documents to the extent set forth in the DIP Facility Documents. All such unpaid fees, expenses and indemnities of the DIP Facility Agents shall constitute DIP Obligations and the repayment thereof shall be secured by the DIP Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Interim Order and the DIP Facility Documents.

14. <u>Adequate Protection of Prepetition ABL Loan Secured Parties</u>. In consideration for the use of Cash Collateral and the priming of the Prepetition ABL Agent's and Prepetition ABL Lenders' Liens, claims and interests in the Prepetition Collateral (solely upon the terms and conditions of this Interim Order), the Prepetition ABL Loan Secured Parties shall receive the following (collectively, the "<u>ABL Loan Lien Adequate Protection</u>"):

(a) <u>Adequate Protection Liens</u>. The Prepetition ABL Agent, on behalf of the Prepetition ABL Lenders, is granted as adequate protection (i) a replacement lien on the Prepetition Collateral and the DIP Collateral to secure the Prepetition ABL Agent's claim for repayment of the Prepetition ABL Agreement Expenses (the "<u>ABL Expense Replacement Lien</u>") and (ii) a replacement lien on the Prepetition Collateral and DIP Collateral (the "<u>ABL Diminution Replacement Lien</u>" and, together with the ABL Expense Replacement Lien, the "<u>Prepetition ABL Lenders' Replacement Liens</u>") to the extent there is a diminution in the value of the Prepetition ABL Lenders' interests in the Prepetition Collateral during the pendency of

38

these Cases, whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the priming of the Liens arising under the Prepetition ABL Loan Documents, the use of Cash Collateral, the physical deterioration, consumption, use, sale, lease, disposition, shrinkage or decline in market value of the Prepetition Collateral, the imposition of the automatic stay or otherwise (including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to the Prepetition ABL Agent's (on behalf of the Prepetition ABL Lenders) seeking vacation of the automatic stay or the Bankruptcy Court granting such relief). The Prepetition ABL Lenders' Replacement Liens shall be junior to the Senior Prepetition ABL Permitted Liens with respect to the ABL Priority Collateral, junior to the Senior Prepetition Term Loan Permitted Liens with respect to the Term Loan Priority Collateral and senior to any other liens, including, without limitation, the DIP Facility Liens; provided, however, that the Prepetition ABL Lenders' Replacement Liens shall be junior to the DIP Facility Liens to the extent that the Prepetition ABL Lenders' Replacement Liens secure the payment of Subject Prepetition ABL Agreement Expenses. The Prepetition ABL Lenders' Replacement Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtors or the Prepetition ABL Agent of security agreements, pledge agreements, financing statements or other agreements. The Prepetition ABL Lenders' Replacement Liens shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code and shall cover assets, interest and proceeds of the Debtors that are or would be collateral under the Prepetition ABL Loan Documents if not for Bankruptcy Code section 552(a), and all cash and cash equivalents. The Prepetition ABL Lenders' Replacement Liens shall be junior and subordinate only to the Carve-Out and (i) the

39

Senior Prepetition ABL Permitted Liens with respect to the ABL Priority Collateral and (ii) the Senior Prepetition Term Loan Permitted Liens with respect to the Term Loan Priority Collateral.

(b) <u>Administrative Claim</u>. The Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Lenders, is hereby granted in each of the Debtors' Cases an allowed administrative claim (the "<u>ABL Lien Administrative Claim</u>") under Bankruptcy Code section 507(b) with respect to all adequate protection obligations, to the extent that the Prepetition ABL Lenders' Replacement Liens do not adequately protect the diminution in the value of the Prepetition ABL Lenders' interests in the Prepetition Collateral from the Petition Date, and such ABL Lien Administrative Claim shall be shall be senior in priority to the DIP Superpriority Claims and junior and subordinate only to the Carve-Out; <u>provided, however</u>, that, to the extent it arises on account of Subject Prepetition ABL Agreement Expenses, the ABL Lien Administrative Claim shall be junior and subordinate to the DIP Facility Superpriority Claim. The ABL Lien Administrative Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof. The ABL Lien Administrative Claim shall include, for the avoidance of doubt, the claims secured by the ABL Expense Replacement Lien (the "<u>ABL Expense Administrative Claim</u>") and the claim secured by the ABL Diminution Replacement Lien (the "<u>ABL Diminution Administrative Claim</u>"); <u>provided, however</u>, that the ABL Expense Administrative Claim shall be first in priority, second only to the ABL Diminution Administrative Claims, in the priority of claims contained within the ABL Lien Administrative Claims.

(c) <u>Adequate Protection Payments</u>. As additional adequate protection, (i) the Prepetition ABL Agent shall be entitled to, and the Debtors are directed to timely pay, the ongoing payment of the Prepetition ABL Agreement Expenses, including the fees and expenses

of legal counsel and other professionals retained by the Prepetition ABL Agent, as and when due and payable under the Prepetition ABL Loan Documents (without giving effect to any acceleration provision therein) and, for the avoidance of doubt, Wells Fargo, as Co-Collateral Agent, shall be entitled to the ongoing payment of the Prepetition ABL Agreement Expenses (without giving effect to any acceleration provision therein) and regardless of whether such fees accrued prior to the Petition Date, including the separate fees and expenses of legal counsel and other professionals retained by Wells Fargo, as Co-Collateral Agent, and such adequate protection payments shall not be subject to any limitations in the Budget; and (ii) except for the DIP Facility, the Prepetition ABL Lenders' Replacement Liens, the Prepetition Permitted Liens and the DIP Facility Liens granted to the Tranche A Administrative Agent, for the benefit of the Administrative Agents and the DIP Facility Lenders, pursuant to this Interim Order, the Debtors shall be prohibited from incurring additional indebtedness with claim status and with priority over the Prepetition ABL Loan Indebtedness or liens equal to or senior in priority to the Liens arising under the Prepetition ABL Loan Documents. All fees and expenses of the Prepetition ABL Agent and certain Prepetition ABL Lenders that were incurred under the Prepetition ABL Loan Documents and paid by the Debtors prior to the Petition Date are deemed paid as adequate protection and are not subject to recharacterization and are not avoidable or recoverable under any applicable law from the Prepetition ABL Agent, the Prepetition ABL Lenders or any of such professionals. All amounts paid as adequate protection are deemed permitted uses of Cash Collateral.

(d)  The Prepetition ABL Loan Secured Parties may petition the Bankruptcy Court for any such additional protection they may reasonably require with respect to the Prepetition ABL Loan Indebtedness or otherwise, including, without limitation, their rights to

41

request additional adequate protection of their interests in the Prepetition Collateral or the Cash Collateral or relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code.

15.    Adequate Protection of Prepetition First Lien Term Loan Secured Parties. In consideration for the use of Cash Collateral and the priming of the Prepetition First Lien Term Loan Administrative Agent's and Prepetition First Lien Term Loan Lenders' Liens, claims and interests in the Prepetition Collateral (solely upon the terms and conditions of this Interim Order), the Prepetition First Lien Term Loan Secured Parties shall receive the following (collectively, the "First Lien Adequate Protection"):

(a)    Adequate Protection Liens. The Prepetition First Lien Term Loan Administrative Agent, on behalf of the Prepetition First Lien Term Loan Lenders, is granted as adequate protection (i) a replacement lien (the "First Lien Term Loan Expense Replacement Lien") on the Prepetition Collateral and the DIP Collateral to secure the Prepetition First Lien Term Loan Administrative Agent's claim for repayment of fees and expenses owed to the Prepetition First Lien Term Loan Administrative Agent pursuant to the Prepetition First Lien Term Loan Documents (the "First Lien Term Loan Expenses") and (ii) a replacement lien on the Prepetition Collateral and DIP Collateral (the "First Lien Term Loan Diminution Replacement Lien" and, together with the First Lien Term Loan Expense Replacement Lien, the "Prepetition First Lien Term Loan Lenders' Replacement Liens") to the extent there is a diminution in the value of the Prepetition First Lien Term Loan Lenders' interests in the Prepetition Collateral during the pendency of these Cases, whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the priming of the Liens arising under the Prepetition First Lien Term Loan Documents, the use of Cash Collateral, the physical

42

deterioration, consumption, use, sale, lease, disposition, shrinkage or decline in market value of the Prepetition Collateral, the imposition of the automatic stay or otherwise (including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to the Prepetition First Lien Term Loan Administrative Agent's (on behalf of the Prepetition First Lien Term Loan Lenders) seeking vacation of the automatic stay or the Bankruptcy Court granting such relief). The Prepetition First Lien Term Loan Lenders' Replacement Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtors or the Prepetition First Lien Term Loan Administrative Agent of security agreements, pledge agreements, financing statements or other agreements. The Prepetition First Lien Term Loan Lenders' Replacement Liens shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code and shall cover assets, interest and proceeds of the Debtors that are or would be collateral under the Prepetition First Lien Term Loan Documents if not for Bankruptcy Code section 552(a), and all cash and cash equivalents. The Prepetition First Lien Term Loan Lenders' Replacement Liens shall be junior and subordinate only to the Carve-Out, the DIP Facility Liens, the Prepetition ABL Lenders' Replacement Liens with respect to the ABL Priority Collateral, the Prepetition ABL Lenders' Replacement Liens with respect to the Term Priority Collateral other than to the extent that they secure the payment of Subject Prepetition ABL Agreement Expenses and (i) the Senior Prepetition ABL Permitted Liens with respect to the ABL Priority Collateral and (ii) the Senior Prepetition Term Loan Permitted Liens with respect to the Term Loan Priority Collateral. The Prepetition First Lien Term Loan Lenders' Replacement Liens and the Liens of the Prepetition First Lien Term Loan Secured Parties shall be senior to the Prepetition ABL Lenders'

43

Replacement Liens with respect to the Term Priority Collateral to the extent that they secure the payment of Subject Prepetition ABL Agreement Expenses.

(b)     Administrative Claim. The First Lien Term Loan Agent, on behalf of itself and the Prepetition First Lien Term Loan Lenders, is hereby granted in each of the Debtors' Cases an allowed administrative claim (the "First Lien Term Loan Administrative Claim") under Bankruptcy Code section 507(b) with respect to all adequate protection obligations, to the extent that the Prepetition First Lien Term Loan Lenders' Replacement Liens do not adequately protect the diminution in the value of the Prepetition First Lien Term Loan Lenders' interests in the Prepetition Collateral from the Petition Date, and such First Lien Term Loan Administrative Claim shall be junior and subordinate only to the Carve-Out, the DIP Facility Superpriority Claim and the adequate protection claims arising pursuant to the Prepetition ABL Lenders' Replacement Liens. The First Lien Term Loan Administrative Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof. The First Lien Term Loan Administrative Claim shall include, for the avoidance of doubt, the claims secured by the First Lien Term Loan Expense Replacement Lien (the "First Lien Term Loan Expense Administrative Claim") and the claim secured by the First Lien Term Loan Diminution Replacement Lien (the "First Lien Term Loan Diminution Administrative Claim"); provided, however, that the First Lien Term Loan Expense Administrative Claim shall be first in priority, second only to the First Lien Term Loan Diminution Administrative Claims, in the priority of claims contained within the First Lien Term Loan Administrative Claims.

(c)     Adequate Protection Payments. As additional adequate protection the Prepetition First Lien Term Loan Administrative Agent shall be entitled to, and the Debtors

44

are directed to timely pay, the ongoing payment of the First Lien Term Loan Expenses, including the fees and expenses of legal counsel and other professionals retained by the Prepetition First Lien Term Loan Administrative Agent, as and when due and payable under the Prepetition First Lien Term Loan Documents (without giving effect to any acceleration provision therein) and regardless of whether such fees accrued prior to the Petition Date, but excluding any payment of accrued or hereinafter accruing interest, and such adequate protection payments shall not be subject to any limitations in the Budget. All fees and expenses of the Prepetition First Lien Term Loan Agent and certain First Lien Term Loan Secured Parties that were incurred under the Prepetition First Lien Term Loan Documents and paid by the Debtors prior to the Petition Date are deemed paid as adequate protection and are not subject to recharacterization and are not avoidable or recoverable under any applicable law from the Prepetition First Lien Term Loan Agent, the First Lien Term Loan Secured Parties or any of such professionals. All amounts paid as adequate protection are deemed permitted uses of Cash Collateral.

(d)     The Prepetition First Lien Loan Secured Parties may petition the Bankruptcy Court for any such additional protection they may reasonably require with respect to the Prepetition First Lien Term Loan Indebtedness or otherwise, including, without limitation, their rights to request additional adequate protection of their interests in the Prepetition Collateral or the Cash Collateral or relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code.

16.     Adequate Protection of Prepetition Second Lien Term Loan Secured Parties. In consideration for the use of Cash Collateral and the priming of the Prepetition Second Lien Term Loan Administrative Agent's and Prepetition Second Lien Term Loan Lenders' liens, claims and interests in the Prepetition Collateral (solely upon the terms and conditions of this

45

Interim Order), the Prepetition Second Lien Term Loan Secured Parties shall receive the following (collectively, the "Second Lien Adequate Protection"):

(a) Adequate Protection Liens. The Prepetition Second Lien Term Loan Administrative Agent, on behalf of the Prepetition Second Lien Term Loan Lenders, is granted as adequate protection (i) a replacement lien (the "Second Lien Term Loan Expense Replacement Lien") on the DIP Collateral to secure the Prepetition Second Lien Term Loan Administrative Agent's claim for repayment of fees and expenses owed to the Prepetition Second Lien Term Loan Administrative Agent pursuant to the Prepetition Second Lien Term Loan Documents (the "Second Lien Term Loan Expenses") and (ii) a replacement lien on the Prepetition Collateral and DIP Collateral (the "Second Lien Term Loan Diminution Replacement Lien" and, together with the Second Lien Term Loan Expense Replacement Lien, the "Prepetition Second Lien Term Loan Lenders' Replacement Liens" and, together with the Prepetition ABL Lenders' Replacement Liens and Prepetition First Lien Term Loan Lenders' Replacement Liens, the "Replacement Liens") to the extent there is a diminution in the value of the Prepetition Second Lien Term Loan Lenders' interests in the Prepetition Collateral during the pendency of these Cases, whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the priming of the Liens arising under the Prepetition Second Lien Term Loan Documents, the use of Cash Collateral, the physical deterioration, consumption, use, sale, lease, disposition, shrinkage or decline in market value of the Prepetition Collateral, the imposition of the automatic stay or otherwise (including, without limitation, any diminution in value of such interests in the Prepetition Collateral prior to the Prepetition Second Lien Term Loan Administrative Agent's (on behalf of the Prepetition Second Lien Term Loan Lenders) seeking vacation of the automatic stay or the Bankruptcy Court granting such relief). The

46

Prepetition Second Lien Term Loan Lenders' Replacement Liens are valid, binding, enforceable and fully perfected as of the Petition Date without the necessity of the execution, filing or recording by the Debtors or the Prepetition Second Lien Term Loan Administrative Agent of security agreements, pledge agreements, financing statements or other agreements. The Prepetition Second Lien Term Loan Lenders' Replacement Liens shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code and shall cover assets, interest and proceeds of the Debtors that are or would be collateral under the Prepetition Second Lien Term Loan Documents if not for Bankruptcy Code section 552(a), and all cash and cash equivalents. The Prepetition Second Lien Term Loan Lenders' Replacement Liens shall be junior and subordinate only to the Carve-Out, the DIP Facility Liens, the Prepetition ABL Lenders' Replacement Liens with respect to the ABL Priority Collateral, the Prepetition ABL Lenders' Replacement Liens with respect to the Term Priority Collateral other than to the extent that they secure the payment of Subject Prepetition ABL Agreement Expenses and (i) the Prepetition First Lien Term Loan Lenders' Replacement Liens and the Senior Prepetition ABL Permitted Liens with respect to the ABL Priority Collateral and (ii) the Prepetition First Lien Term Loan Lenders' Replacement Liens and the Senior Prepetition Term Loan Permitted Liens with respect to the Term Loan Priority Collateral. The Prepetition Second Lien Term Lenders' Replacement Liens and the Liens of the Prepetition Second Lien Term Loan Secured Parties shall be senior to the Prepetition ABL Lenders' Replacement Liens with respect to the Term Priority Collateral to the extent that they secure the payment of Subject Prepetition ABL Agreement Expenses.

(b)     Administrative Claim. The Second Lien Term Loan Agent, on behalf of itself and the Prepetition Second Lien Term Loan Lenders, is hereby granted in each of the Debtors' Cases an allowed administrative claim (the "Second Lien Term Loan

47

Administrative Claim") under Bankruptcy Code section 507(b) with respect to all adequate protection obligations, to the extent that the Prepetition Second Lien Term Loan Lenders' Replacement Liens do not adequately protect the diminution in the value of the Prepetition Second Lien Term Loan Lenders' interests in the Prepetition Collateral from the Petition Date, and such Second Lien Term Loan Administrative Claim shall be junior and subordinate only to the Carve-Out, the DIP Facility Superpriority Claim, the adequate protection claims arising pursuant to the Prepetition ABL Lenders' Replacement Liens and the adequate protection claims arising pursuant to the Prepetition First Lien Term Loan Lenders' Replacement Liens. The Second Lien Term Loan Administrative Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof. The Second Lien Term Loan Administrative Claim shall include, for the avoidance of doubt, the claims secured by the Second Lien Term Loan Expense Replacement Lien (the "Second Lien Term Loan Expense Administrative Claim") and the claim secured by the Second Lien Term Loan Diminution Replacement Lien (the "Second Lien Term Loan Diminution Administrative Claim"); provided, however, that the Second Lien Term Loan Expense Administrative Claim shall be first in priority, second only to the Second Lien Term Loan Diminution Administrative Claims, in the priority of claims contained within the Second Lien Term Loan Administrative Claims.

(c)     Adequate Protection Payments. As additional adequate protection the Prepetition Second Lien Term Loan Administrative Agent shall be entitled to, and the Debtors are directed to timely pay, the ongoing payment of the Second Lien Term Loan Expenses, including the fees and expenses of legal counsel and other professionals retained by the Prepetition Second Lien Term Loan Administrative Agent, as and when due and payable under the Prepetition Second Lien Term Loan Documents (without giving effect to any

PHIL1 1356881-1

acceleration provision therein) and regardless of whether such fees accrued prior to the Petition Date, but excluding any payment of accrued or hereinafter accruing interest, and such adequate protection payments shall not be subject to any limitations in the Budget. All fees and expenses of the Prepetition Second Lien Term Loan Agent and certain Second Lien Term Loan Secured Parties that were incurred under the Prepetition Second Lien Term Loan Documents and paid by the Debtors prior to the Petition Date are deemed paid as adequate protection and are not subject to recharacterization and are not avoidable or recoverable under any applicable law from the Prepetition Second Lien Term Loan Agent, the Second Lien Term Loan Secured Parties or any of such professionals. All amounts paid as adequate protection are deemed permitted uses of Cash Collateral.

(d) The Prepetition Second Lien Loan Secured Parties may petition the Bankruptcy Court for any such additional protection they may reasonably require with respect to the Prepetition Second Lien Term Loan Indebtedness or otherwise, including, without limitation, their rights to request additional adequate protection of their interests in the Prepetition Collateral or the Cash Collateral or relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code.

17. Reserved.

18. Restrictions on the Debtors. Other than the Carve-Out, the Prepetition Permitted Liens and the Prepetition ABL Lenders' Replacement Liens, no claim or Lien having a priority superior or *pari passu* with those granted by this Interim Order to the Tranche A Administrative Agent, for the benefit of the Administrative Agents and the DIP Facility Lenders, shall be granted by any Debtor or Guarantor, while any portion of the DIP Facility (or refinancing thereof), adequate protection or the commitment thereunder remains outstanding

49

without the written consent of the Administrative Agents. Except as expressly permitted by Section 6.02 of the DIP Facility Agreement and this Interim Order, the Debtors will not, at any time during the Cases, grant mortgages, security interests, or liens in the DIP Collateral or any portion thereof to any other parties pursuant to section 364(d) of the Bankruptcy Code or otherwise.

19. Additional Perfection Measures. The Administrative Agents, DIP Facility Lenders, Prepetition ABL Loan Secured Parties, Prepetition First Lien Term Loan Secured Parties and Prepetition Second Lien Term Loan Secured Parties shall not be required to file financing statements, mortgages, deeds of trust, security deeds, notices of lien, or similar instruments in any jurisdiction or effect any other action to attach or perfect the security interests and liens granted under the DIP Facility Documents and this Interim Order (including, without limitation, the taking possession of any of the DIP Collateral (in accordance with the terms of the DIP Facility Agreement), or the taking of any action to have security interests or liens noted on certificates of title or similar documents). Notwithstanding the foregoing, the Administrative Agents, DIP Facility Lenders, Prepetition ABL Loan Secured Parties Prepetition First Lien Term Loan Secured Parties and Prepetition Second Lien Term Loan Secured Parties may, in their sole discretion, file this Interim Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments or otherwise confirm perfection of such liens, security interests and mortgages without seeking modification of the automatic stay under section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded at the time of and on the Petition Date, with the priorities set forth herein.

20. Access to Collateral – No Landlord's Liens. Solely upon entry of the Final Order, notwithstanding anything contained herein to the contrary and without limiting any

50

other rights or remedies of the Tranche A Administrative Agent, for the ratable benefit of the DIP Facility Lenders, contained in this Interim Order or the DIP Facility Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Facility Agreement, upon reasonable prior written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the Tranche A Administrative Agent may, subject to any separate agreement by and between such landlord and the Tranche A Administrative Agent and applicable non-bankruptcy law (each a "Separate Agreement"), enter upon any leased premises of the Debtors for the purpose of exercising any remedy (in accordance with the terms of the DIP Facility Agreement) with respect to DIP Collateral located thereon and, subject to such Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder; provided that, subject to such Separate Agreement, the Tranche A Administrative Agent shall only pay rent of the Debtors that first accrues after the Tranche A Administrative Agent's written notice referenced above and that is payable during the period of such occupancy by the Tranche A Administrative Agent, calculated on a per diem basis. Nothing herein shall require the Tranche A Administrative Agent to assume any lease as a condition to the rights afforded to the Tranche A Administrative Agent in this paragraph.

21.     Automatic Stay.  (a) Subject only to the provisions of the DIP Facility Agreement and without further order from the Bankruptcy Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit either Administrative Agent, subject to the terms and conditions set forth in the DIP Facility Agreement, and DIP Facility Lenders to exercise, upon the occurrence and during the continuance of any Event of Default, all rights and remedies provided for in the DIP Facility

51

Documents (including, without limitation and without prior notice, the right to freeze monies or balances in the Debtors' accounts or set off monies or balances of the Debtors in accounts maintained by the Administrative Agents or any DIP Facility Lender, the right to charge default rate of interest and to terminate commitments); provided, however, that prior to the exercise of any enforcement or liquidation remedies against the DIP Collateral (other than those specifically set forth in the parenthetical included in the preceding portion of this sentence), the Administrative Agents shall be required to give five (5) business days prior written notice to the Debtors, counsel to the Debtors, the Committee's counsel (if appointed), the U.S. Trustee and, if applicable, the other Administrative Agent; provided, further, that during such five (5) business day period the Borrowers' authority to use Cash Collateral shall not terminate; provided, further, that the Tranche A Administrative Agent will comply with Section 8.02 of the DIP Facility Agreement. Notwithstanding the occurrence of an Event of Default or termination of the Commitments under the DIP Facility Agreement or anything herein, all of the rights, remedies, benefits and protections provided to the Administrative Agents, Prepetition ABL Loan Secured Parties, Prepetition First Lien Term Loan Secured Parties, the Prepetition Second Lien Term Loan Secured Parties, and DIP Facility Lenders under the DIP Facility Documents and this Interim Order shall survive the Maturity Date (as defined in the DIP Facility Agreement). Upon receiving notice of the exercise of remedies by one or both of the Administrative Agents, the Debtors, the Committee and/or the Administrative Agent not sending such notice, subject to the terms and conditions set forth in the DIP Facility Agreement, shall be entitled to seek an expedited hearing following the occurrence of an Event of Default; provided, however, that the only issue to be determined at such hearing is whether an Event of Default has occurred and is continuing. Upon expiration of such five (5) business day period, the Debtors' authority to use

52

Cash Collateral shall terminate without further order of the Bankruptcy Court. The Bankruptcy Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay as provided hereunder.

(b) Immediately following the giving of notice by either Administrative Agent, subject to the terms and conditions set forth in the DIP Facility Agreement, of the occurrence of an Event of Default (except as otherwise ordered by this Bankruptcy Court): (i) the Debtors shall, subject to the rights, if any, of the holders of any Senior Prepetition Term Loan Permitted Liens with respect to the Term Loan Priority Collateral, Senior Prepetition ABL Permitted Liens with respect to the ABL Priority Collateral, Prepetition ABL Lenders' Replacement Liens and the Carve Out, continue to deliver and cause the delivery of the proceeds of Collateral, in accordance with this Interim Order and the DIP Facility Agreement to the Administrative Agents for application to the DIP Obligations pursuant to the DIP Facility Agreements, and (ii) the Administrative Agents shall continue to apply such proceeds in accordance with the provisions of this Interim Order and the DIP Facility Agreement; (iii) the Debtors shall have no right to seek to use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the Prepetition Obligations, the DIP Obligations, obligations arising as a result of the Replacement Liens and the Carve-Out; and (iv) any obligation otherwise imposed on the applicable DIP Facility Lenders or Administrative Agent to provide any loan or advance or to issue any letters of credit to or for the benefit of Debtors pursuant to the DIP Facility shall be immediately suspended.

53

(c)     If the Debtors or Committee do not contest the right of the applicable Administrative Agent or the DIP Facility Lenders to exercise their remedies based upon whether an Event of Default has occurred within such time period, or if the Debtors or Committee do timely contest the occurrence of an Event of Default and this Bankruptcy Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the applicable DIP Facility Lenders and Administrative Agent shall automatically terminate at the end of such notice period.

(d)     If the applicable DIP Facility Lenders and Administrative Agent shall exercise any of their rights and remedies upon the occurrence of an Event of Default, the applicable Administrative Agent, subject to the terms and conditions set forth in the DIP Facility Agreement, upon notice to the Debtors and Committee, may retain one or more agents to sell, lease, or otherwise dispose of the Collateral. In any exercise of their rights and remedies upon an Event of Default, the applicable DIP Facility Lenders and Administrative Agent, subject to the terms and conditions set forth in the DIP Facility Agreement, are authorized to proceed under or pursuant to the DIP Facility Agreement.

(e)     Subject to the rights, if any, of the holders of any Senior Prepetition Term Loan Permitted Liens with respect to the Term Loan Priority Collateral, Senior Prepetition ABL Permitted Liens with respect to the ABL Priority Collateral, Prepetition ABL Lenders' Replacement Liens and the Carve Out, all proceeds realized from any of the foregoing shall be turned over to the Administrative Agents for application to the DIP Obligations pursuant to the DIP Facility Agreement (and Section 3 above) and following payment in full, in cash, of the DIP Obligations to the Debtors (including the deposit of cash

54

collateral equal to 105% of any outstanding letters of credit) for distribution to further order of the Court.

22. <u>Modification of Automatic Stay</u>. The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Facility Agreement so, as necessary, to (1) permit the Debtors to grant the Replacement Liens and the DIP Liens and to incur all liabilities and obligations under the DIP Facility Agreement, the DIP Facility, and this Interim Order, as applicable, and (2) authorize the Administrative Agents and the Prepetition Secured Parties to retain and apply payments hereunder.

23. <u>First Lien Credit Bid</u>. Solely upon entry of the Final Order, the Prepetition First Lien Term Loan Administrative Agent, in accordance with the Prepetition First Lien Term Loan Documents, shall have the unqualified right to credit bid up to the full amount of any remaining First Lien Term Loan Administrative Claim and the Prepetition First Lien Term Loan Indebtedness separately or together and in any combination of the two in any sale of the DIP Collateral or Prepetition Collateral, as applicable, under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that (x) the respective liens of the Prepetition ABL Secured Parties and Tranche A Administrative Agent and Tranche A Lenders set forth herein shall survive any such credit bid until the Tranche A Facility is satisfied, in full, in cash and (y) the proceeds of such section 363 sale, plan of reorganization or plan of liquidation or sale or disposition by a chapter 7 trustee for any Debtor must satisfy, and must be immediately used to satisfy, in full, in cash the outstanding amount of the Tranche A Facility. The Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or

55

part of the DIP Collateral or Prepetition Collateral that does not include an unqualified right to credit bid up to the full amount of the First Lien Term Loan Administrative Claim and/or Prepetition First Lien Term Loan Indebtedness would not result in the Prepetition First Lien Term Loan Administrative Agent and the Prepetition First Lien Term Loan Lenders receiving the indubitable equivalent of their claims and interest.

        24.   <u>Second Lien Credit Bid</u>. Solely upon entry of the Final Order, the Prepetition Second Lien Term Loan Administrative Agent, in accordance with the Prepetition Second Lien Term Loan Documents, shall have the unqualified right to credit bid up to the full amount of any remaining Second Lien Term Loan Administrative Claim and the Prepetition Second Lien Term Loan Indebtedness separately or together and in any combination of the two in any sale of the DIP Collateral or Prepetition Collateral, as applicable, under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code; <u>provided, however</u>, that (x) the respective liens of the Prepetition ABL Secured Parties and Tranche A Administrative Agent and Tranche A Lenders set forth herein shall survive any such credit bid until the Tranche A Facility is satisfied, in full, in cash and (y) the proceeds of such section 363 sale, plan of reorganization or plan of liquidation or sale or disposition by a chapter 7 trustee for any Debtor must satisfy, and must be immediately used to satisfy, in full, in cash the outstanding amount of the Tranche A Facility. The Debtors, on behalf of themselves and their estates, stipulate and agree that any sale of all or part of the DIP Collateral or Prepetition Collateral that does not include an unqualified right to credit bid up to the full amount of the Second Lien Term Loan Administrative Claim and/or Prepetition Second Lien Term Loan Indebtedness would not result in the Prepetition

Second Lien Term Loan Administrative Agent and the Prepetition Second Lien Term Loan Lenders receiving the indubitable equivalent of their claims and interest.

25.     Binding Effect.     The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Facility Agents, DIP Facility Lenders, Prepetition ABL Loan Secured Parties, Prepetition First Lien Term Loan Secured Parties, Prepetition Second Lien Term Loan Secured Parties, the Debtors and each of the foregoing parties' respective successors and assigns, including any trustee hereafter appointed for the estate of any of the Debtors, whether in these Cases or in the event of the conversion of any of the Cases to a liquidation under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Interim Order.

26.     Survival.     The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any order (i) confirming any plan of reorganization in any of the Cases (and, to the extent not satisfied in full, in cash, the DIP Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge), (ii) converting any of the Cases to a chapter 7 case unless permitted under the DIP Facility Documents, or (iii) dismissing any of the Cases unless permitted under the DIP Facility Documents, and the terms and provisions of this Interim Order as well as the DIP Facility Superpriority Claims, the DIP Facility Liens, the adequate protection granted pursuant to this Interim Order and/or the DIP Facility Documents shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Interim Order and the DIP Facility Documents to the maximum extent permitted by law until all of the DIP Obligations is indefeasibly paid in full, in cash, and discharged.

57

27.     Access to the Debtors. In accordance with the provisions of access in the DIP Facility Documents, the Debtors shall permit representatives, agents and/or employees of the DIP Facility Agents and their respective counsel to have reasonable access to their premises and records during normal business hours (without unreasonable interference with the proper operation of the Debtors' businesses) and shall cooperate, consult with and provide to such representatives, agents and/or employees all such information as they may reasonably request.

28.     Authorization to Act. Each of the Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees and all other amounts as provided under this Interim Order and the DIP Facility, which may be reasonably required or necessary for the Debtors' full and timely performance under the DIP Facility and this Interim Order, including, without limitation:

(a)     the execution of the DIP Facility Documents;

(b)     the modification or amendment of the DIP Facility Agreement or any other DIP Facility Documents without further order of the Bankruptcy Court, in each case, in such form as the Debtors, the Administrative Agents and the required DIP Facility Lenders may agree in accordance with the terms of the DIP Facility; provided, however, that notice of any material modification or amendment (including any waiver of any Event of Default) shall be provided to counsel for the Committee, if appointed, and the U.S. Trustee, each of which will have five (5) days from the date of delivery of such notice within which to object in writing; provided further, however, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Bankruptcy Court; and

58

(c)     the non-refundable payments to the DIP Facility Agents or the DIP Facility Lenders, as the case may be, of the fees referred to in the DIP Facility Agreement and the Tranche A Fee Letter (as defined in the DIP Facility Agreement), and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable attorneys' and other professional fees and disbursements as provided in the DIP Facility Documents.

29.     Insurance Policies.  Upon entry of this Interim Order, the Administrative Agents and DIP Facility Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors which in any way relates to the DIP Collateral.  Any insurance proceeds or other receipts from any source (excluding other authorized payments provided for herein) paid to any of the Prepetition Secured Parties shall be immediately delivered to the Debtors and subject to the DIP Facility Liens and provisions of the DIP Facility Agreement.

30.     Subsequent Reversal.  If any or all of the provisions of this Interim Order or the DIP Facility Documents are hereafter modified, vacated, amended or stayed by subsequent order of the Bankruptcy Court or any other court:  (i) such modification, vacatur, amendment or stay shall not affect the validity of any obligation of any Debtor or Guarantor to the DIP Facility Agents, DIP Facility Lenders or Prepetition Secured Parties (to the extent of adequate protection provided hereunder), or the validity, enforceability or priority of the DIP Facility Superpriority Claims, DIP Facility Liens, adequate protection or other grant authorized or created by this Interim Order and the DIP Facility Documents; and (ii) the DIP Obligations and adequate protection pursuant to this Interim Order and the DIP Facility Documents shall be governed in all respects by the original provisions of this Interim Order and the DIP Facility Documents, and the validity of any such credit extended or security interest granted pursuant to this Interim Order

59

and the DIP Facility Documents and use of Cash Collateral is and shall be protected by section 364(e) of the Bankruptcy Code.

31.  **Effect of Dismissal of Cases**.  If the Cases are dismissed, converted or substantively consolidated, then neither the entry of this Interim Order nor the dismissal, conversion or substantive consolidation of these Cases shall affect the rights of the DIP Facility Agents, DIP Facility Lenders and the Prepetition Secured Parties (to the extent of adequate protection provided hereunder) under their respective documents or this Interim Order, and all of the respective rights and remedies thereunder of the DIP Facility Agents, DIP Facility Lenders and the Prepetition Secured Parties (to the extent of adequate protection provided hereunder) shall remain in full force and effect as if the Cases had not been dismissed, converted or substantively consolidated.  If an order dismissing any of the Cases is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Facility Liens granted to the Tranche A Administrative Agent, for the benefit of the Administrative Agents and DIP Facility Lenders, and DIP Facility Superpriority Claim granted to and conferred upon the Administrative Agents and DIP Facility Lenders and the protections afforded to the Administrative Agents and/or the DIP Facility Lenders pursuant to this Interim Order and the DIP Facility Documents shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations shall have been paid and satisfied in full, in cash and, with respect to outstanding undrawn letters of credit, cash collateralized in accordance with the provisions of the DIP Facility Agreement (and that such DIP Facility Liens, DIP Facility Superpriority Claim and other protections shall, notwithstanding such dismissal, remain binding on all interested parties), (ii) the adequate protection granted to and conferred upon the Prepetition Secured Parties shall continue in full force and effect and

60

shall maintain their priorities as provided in this Interim Order until such adequate protection has been satisfied, (iii) the Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Facility Liens, Replacement Liens, Liens arising under the Prepetition ABL Loan Documents, Liens arising under the Prepetition First Lien Term Loan Documents, Liens arising under the Prepetition Second Lien Term Loan Documents, the DIP Facility Superpriority Claim and other adequate protection referred to herein, and (iv) any hearing on a motion to dismiss any of the Cases shall require at least twenty (20) days prior notice to the Administrative Agents.

32.    Findings of Fact and Conclusions of Law. This Interim Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof.

33.    Controlling Effect of Interim Order. To the extent any provision of this Interim Order conflicts with any provision of the Motion, any prepetition agreement or any document executed in connection with the DIP Facility, the provisions of this Interim Order shall control.

34.    Termination of Commitments. The commitment of the DIP Facility Lenders shall terminate and all amounts owing under the DIP Facility shall be due and payable (and, as to letters of credit then outstanding, the Debtors shall be obligated to deposit with the Tranche A Administrative Agent cash in an amount equal to 105% of the face amount of such letters of credit), on the terms and conditions set forth in the DIP Facility Agreement.

35.    Final Hearing. A final hearing on the Motion shall be heard before the Bankruptcy Court on ~~January~~ February 11, 2011 at 3 : 00 p .m. (Prevailing Eastern Time) at the United States Bankruptcy Court for the District of Delaware.

61

36. Adequate Notice. The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rule 4001(c)(2). The Debtors shall promptly mail or fax copies of this Interim Order and notice of the Final Hearing to the Notice Parties and all landlords of the Debtors. Any party-in-interest objecting to the relief sought in the Final Order shall submit any such objection in writing and file the same with the Bankruptcy Court (with a courtesy copy to chambers) and serve (so as to be received) such objection no later than ~~January~~ February 4, 2011 at 4:00 p.m. (Prevailing Eastern Time) on the following:

(a) **Kirkland & Ellis LLP**, 601 Lexington Avenue, New York, NY 10022 (Attn: Joshua A. Sussberg, Esq.), proposed counsel to Debtors and Debtors-in-Possession;

(b) **Klehr Harrison Harvey Branzburg LLP**, 919 N. Market Street, Suite 1000, Wilmington, DE 19801 (Attn: Domenic E. Pacitti, Esq.), proposed local counsel to Debtors and Debtors-in-Possession;

(c) **Winston & Strawn LLP**, 200 Park Avenue, New York, NY 10166 (Attn: William D. Brewer, Esq.) and 35 West Wacker Drive, Chicago, IL 60601 (Attn: Brian I. Swett, Esq.), counsel to the Tranche A Administrative Agent and Prepetition ABL Agent;

(d) **Duane Morris LLP**, 222 Delaware Avenue, Suite 1600, Wilmington, Delaware, 19801 (Attn: Richard W. Riley, Esq.), Delaware counsel to the Tranche A Administrative Agent and Prepetition ABL Agent;

(e) **Brown Rudnick LLP**, One Financial Center, Boston, MA 02111 (Attn. Steven B. Levine, Esq.), counsel to Wells Fargo, as Co-Collateral Agent;

62

(f)     **Sidley Austin LLP**, One South Dearborn, Chicago, IL 60603 (Attn: Matthew A. Clemente, Esq.), counsel to the Ableco Finance LLC as Tranche B Administrative Agent and Prepetition First Lien Term Loan Administrative Agent;

(g)     **Kramer Levin Naftalis and Frankel LLP**, 1177 Avenue of the Americas, New York, NY 10036 (Attn: Douglas Mannal, Esq.), counsel to ACAS as Tranche B Disbursement Agent and the Prepetition Second Lien Term Loan Administrative Agent;

(h)     **Morris, Nichols, Arsht & Tunnell LLP**, 1201 North Market Street, Wilmington, Delaware 19801 (Attn: Derek C. Abbott, Esq.), local counsel to ACAS as Tranche B Disbursement Agent and the Prepetition Second Lien Term Loan Administrative Agent; and

(i)     **Office of the United States Trustee for the District of Delaware**, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: William K. Harrington, Esq.).

Dated: _January 20_, 2011


_____
The Honorable
United States Bankruptcy Judge

63

PHIL1 1356881-1