**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| APPLESEED'S INTERMEDIATE HOLDINGS LLC, *et al.*,[2] | ) | Case No. 11-10160 (KG) |
| | ) | Jointly Administered |
| Debtors. | ) | **Hearing Date: February 11, 2011 at 3:00 p.m. (ET)** |
| | ) | **Objection Deadline: February 4, 2011 at 4:00 p.m. (ET)** |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF ALVAREZ & MARSAL NORTH AMERICA, LLC AS RESTRUCTURING ADVISOR TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

Appleseed's Intermediate Holdings LLC ("***AIH***") d/b/a Orchard Brands and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "***Debtors***"),[3] respectfully represent:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: Appleseed's Intermediate Holdings LLC (6322); Appleseed's Acquisition, Inc. (5835); Appleseed's Holdings, Inc. (9117); Arizona Mail Order Company, Inc. (6359); Bedford Fair Apparel, Inc. (3551); Blair Credit Services Corporation (5966); Blair Factoring Company (4679); Blair Holdings, Inc. (0022); Blair International Holdings, Inc. (8962); Blair LLC (1670); Blair Payroll, LLC (1670); Draper's & Damon's Acquisition LLC (1760); Draper's & Damon's LLC (2759); Fairview Advertising, LLC (2877); Gold Violin LLC (0873); Haband Acquisition LLC (8765); Haband Company LLC (8496); Haband Oaks, LP (8036); Haband Online, LLC (1109); Haband Operations, LLC (2794); Johnny Appleseed's, Inc. (5560); Linen Source Acquisition LLC (2920); LM&B Catalog, Inc. (5729); Monterey Bay Clothing Company, Inc. (2076); Norm Thompson Outfitters, Inc. (8344); NTO Acquisition Corporation (0995); Orchard Brands Insurance Agency LLC (4858); and Wintersilks, LLC (0688). The Debtors' main corporate address is 138 Conant Street, Beverly, Massachusetts 01915.

[3] A detailed description of the Debtors and their businesses, and the facts and circumstances relating to the Debtors' chapter 11 cases, are set forth in the Declaration of T. Neale Attenborough, Chief Executive Officer of Appleseed's Intermediate Holdings LLC, in Support of First Day Pleadings (the "***First Day Declaration***"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"), on January 19, 2011 (the "***Petition Date***").

3. The bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and Rules 2014-1, 2016-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***").

**Relief Requested**

4. By this application (the "***Application***"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the employment and retention of Alvarez & Marsal North America, LLC, together with employees of its professional service advisory affiliates (all of which are wholly-owned by its parent company and employees) and its subsidiaries, agents and independent contractors (collectively, "***A&M***") as the Debtors' restructuring advisor, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions set forth in the engagement letter between AIH, the Debtor Johnny Appleseed's Inc. and A&M, dated as of August 24, 2010, (including any annexes thereto, the "***Engagement Letter***"), a copy of which is annexed as **Exhibit 1** to **Exhibit A** attached hereto and incorporated herein by reference and (b) approving the terms of A&M's employment, hourly rates and the indemnification provisions set forth in the Engagement Letter (as modified pursuant to this Application) under section 328(a) of the Bankruptcy Code. In support of this application, the Debtors submit the declaration of Robert A. Campagna, a Managing Director of A&M (the "***Campagna Declaration***"), a copy of which is attached hereto as **Exhibit B**.

**A&M's Qualifications**

5. In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced restructuring advisors will substantially enhance their attempts to maximize the value of their

estates for the benefit of their stakeholders. A&M is well qualified to provide these services in light of their extensive knowledge and expertise with respect to chapter 11 cases.

6. A&M is a preeminent restructuring consulting firm with extensive experience and an excellent reputation for providing high quality, specialized management and restructuring advisory services to debtors and distressed companies. Specifically, A&M's core services include turnaround advisory services, interim and crisis management, revenue enhancement, claims management and creditor and risk management advisory services. A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including: developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships; assessing and recommending cost reduction strategies; and designing and negotiating financial restructuring packages. During chapter 11 restructurings, A&M is known for its ability to work alongside company management and key constituents to develop a feasible and executable plan of reorganization. A&M provides advice on specific aspects of the turnaround process and helps manage complex constituency relations and communications.

7. A&M has significant qualifications and experience in these matters. Since its inception in 1983, A&M has been a global provider of turnaround advisory services to companies in crisis or those in need of performance improvement in specific financial and operational areas, including: *In re Cooper-Standard Holdings Inc.*, No. 09-12743 (Bankr. D. Del Aug. 3, 2009); *In re Visteon Corp.*, No. 09-11786 (Bankr. D. Del. May 27, 2009); *In re Masonite Corp.*, No. 09-10844 (Bankr. D. Del. Apr. 13, 2009); *In re Leiner Health Prod. Inc.*, No. 08-10446 (Bankr. D. Del. Apr. 8, 2008); *In re DJK Residential LLC*, No. 08-10375 (Bankr. S.D.N.Y. Feb. 26, 2008); *In re Dunmore Homes, Inc.*, No. 08-20569 (Bankr. E.D. Ca. Dec. 20,

2007); *In re Movie Gallery, Inc.*, No. 07-33849 (Bankr. E.D. Va. Oct. 15, 2007); *In re Interstate Bakeries Corp.*, No. 04-45814 (Bankr. W.D. Mo. Oct. 25, 2004); *In re Crescent Jewelers Corp.*, No. 04-44416 (Bankr. N.D. Cal. Sept. 15, 2004); *In re PG&E Natl'l Energy Group, Inc.*, No. 03-30459 (Bankr. D. Md. Aug. 20, 2003); *In re Spiegel, Inc.*, No. 03-11540 (Bankr. S.D.N.Y. Apr. 10, 2003); *In re Network Plus Corp.*, No. 02-10341 (Bankr. D. Del. July 1, 2002); *In re VecTour, Inc.*, No. 01 10903 (Bankr. D. Del. Feb. 11, 2002); *In re The Warnaco Group, Inc.*, No. 01-41643 (Bankr. S.D.N.Y. Dec. 13, 2001).

8. A&M is further qualified given its familiarity with the Debtors' businesses. In the months leading up to the Petition Date, A&M professionals have devoted substantial amounts of time and effort assisting the Debtors to prepare for and implement numerous measures designed to provide the Debtors a smooth transition to operating in chapter 11. Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors and the unique circumstances of these cases, and the Debtors submit that the employment and retention of A&M is in the best interests of the Debtors, their creditors and all parties in interest.

## **Services to Be Provided**

9. Subject to further order of the Court, A&M may provide the services described in the Engagement Letter, including the following:[4]

a. assist in the evaluation of the Debtors' current business plan and cash flow forecast and presentation of such plan and forecast;

b. assist in the identification of cost reduction and operations improvement opportunities;

[4] The summary of the Engagement Letter in this Application is qualified in its entirety by reference to the provisions of the Engagement Letter. To the extent there is any discrepancy between the summary contained in this Application and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Engagement Letter.

c. assist in the development and management of a 13-week cash flow forecast;

d. assist in financing issues including assistance in preparation of reports and liaison with creditors;

e. assist the Debtors in the preparation of financial-related disclosures required by the Court, including the Debtors' Schedules of Assets and Liabilities, Statements of Financial Affairs and Monthly Operating Reports;

f. advise in connection with the development and implementation of key employee compensation and other critical employee benefit programs;

g. assist with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

h. assist the Debtors' management team and counsel focused on the coordination of resources related to the ongoing reorganization effort;

i. assist in the preparation of financial information for distribution to creditors and others, including cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts and analysis of proposed transactions for which Court approval is sought;

j. attend meetings and assist in discussions with potential investors, banks and other secured lenders, any official committee(s) appointed in these chapter 11 cases, the United States Trustee, other parties in interest and professionals hired by same, as requested;

k. assist in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in these chapter 11 cases, including information contained in the disclosure statement;

l. analyze creditor claims by type, entity and individual claim, including assistance with development of databases, as necessary, to track such claims;

m. assist in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

n. assist in the analysis/preparation of information necessary to assess the tax attributes related to the confirmation of a plan of reorganization in these chapter 11 cases, including



PHIL1 1366169-1

the development of the related tax consequences discussed in the disclosure statement; and

o. render such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary consistent with the role of a financial advisor to the extent that it would not be duplicative of services provided by other professionals in these chapter 11 cases.

10. A&M understands the Debtors have chosen Moelis & Company LLC to act as its financial advisor and investment banker. A&M has and will continue to work closely with Moelis & Company LLC to prevent any duplication of efforts in the course of advising the Debtors.

**Professional Compensation**

11. A&M's decision to advise and assist the Debtors in connection with these chapter 11 cases is subject to its ability to be retained in accordance with the Engagement Letter. Specifically, the Engagement Letter provides for the following compensation to A&M.

a. Retainer. A retainer in the amount of $100,000, which the Debtors paid upon execution of the Engagement Letter and to be credited against any amounts due at the termination of the engagement and returned upon the satisfaction of all obligations enumerated in the Engagement Letter.

b. Hourly rates. Fees based on the following hourly rates:[5]

| | |
|---|---|
| Managing Directors | $650-850 |
| Directors | $450-650 |
| Associates | $350-450 |
| Analysts | $250-350 |

12. In addition to the fees described above, the Debtors agree to reimburse A&M for its reasonable and documented out-of-pocket expenses incurred in connection with this engagement, such as travel, lodging, duplicating, messenger and telephone charges. In addition, A&M shall be reimbursed for the reasonable fees and expenses of its counsel incurred in

[5] Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

connection with the preparation and approval of this Application. All fees and expenses due to A&M will be billed in accordance with any interim compensation orders entered by this Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules and Local Rules of this Court.

13. A&M intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines (the "***Trustee Guidelines***") established by the United States Trustee for the District of Delaware (the "***U.S. Trustee***") and any other applicable procedures and orders of the Court, on an hourly basis. To that end, contemporaneously herewith, the Debtors have filed the *Debtors' Motion for Entry of an Order Establishing Procedures for Interim Compensation and Reimbursement for Professionals*, pursuant to which A&M intends to submit requests for compensation.

14. The Debtors believe the Engagement Letter and the hourly rates contemplated therein are consistent with and typical of compensation arrangements entered into by A&M and other comparable firms in connection with the rendering of similar services under similar circumstances. The Debtors believe, as does A&M, that the terms and conditions in the Engagement Letter are in fact reasonable, consistent with the market of providers of similar services and designed to compensate A&M fairly for its work and to cover fixed and routine overhead expenses.

15. As of the Petition Date, the Debtors do not owe A&M any fees for services performed or expenses incurred under the Engagement Letter. Further, during the 90-day period before the Petition Date, A&M received approximately $1,429,000 for professional services

performed and approximately $29,000 for expenses incurred.

## **Indemnification**

16. As part of the overall compensation payable to A&M under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification obligations as specifically enumerated in the Engagement Letter.

17. The terms of the Engagement Letter and indemnification and contribution provisions included therein were negotiated at arm's-length between the Debtors and A&M, and the Debtors respectfully submit that these provisions of the Engagement Letter are reasonable and in the best interests of the Debtors, their estates and creditors.

18. Moreover, consistent with the practice in this jurisdiction, the Debtors requested, and A&M has agreed, that the Court approve the indemnification and contribution provisions reflected in the Engagement Letter subject to the modifications set forth in the proposed order attached hereto as **Exhibit A**.

19. The Debtors believe that the proposed modifications to the indemnification, and contribution provisions of the Engagement Letter are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction and should be approved.

## **Efforts to Avoid Duplication of Services**

20. A&M's services are intended to complement, and not duplicate, the services to be rendered by any other professional retained in these chapter 11 cases. A&M has informed the Debtors that it understands the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## **A&M's Disinterestedness**

21. A&M has reviewed the list of parties in interest provided by the Debtors. To the

best of the A&M's knowledge, as of the date hereof, and except to the extent disclosed herein and in the Campagna Declaration, A&M (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no material connection to the Debtors, their creditors or their related parties.

22. Given the large number of parties in interest in these chapter 11 cases, despite the efforts to identify and disclose A&M's relationships with parties in interest in these chapter 11 cases, A&M is unable to state with certainty that every client relationship or other connection has been disclosed in the Campagna Declaration. To the extent that A&M discovers any new relevant facts or relationships bearing on the matters described herein during the period of A&M's retention, A&M will use reasonable efforts to file promptly a supplemental declaration as required by Bankruptcy Rule 2014(a).

23. The Debtors are informed that A&M will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than other principals and employees of A&M, to the extent required by section 504 of the Bankruptcy Code.

## Authority

### A. The Bankruptcy Code Permits the Employment and Retention of A&M on Terms Substantially Similar to Those in the Engagement Letter.

24. Section 327(a) of the Bankruptcy Code authorizes a debtor to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a).

25. In addition, section 328(a) of the Bankruptcy Code provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional

person under section 327 . . . on any reasonable terms and conditions of employment, including . . . on an hourly basis . . . ." 11 U.S.C. § 328(a).

26. Additionally, Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Local Rule 2016-2(d) also requires retained professionals to submit detailed time entries that set forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity and the parties involved with the activity at issue.

27. As set forth above and in the Campagna Declaration, the Debtors believe that the foregoing requirements have been satisfied including the requirement that A&M is a "disinterested person" and the contemplated terms of the Engagement Letter are reasonable. Accordingly, the Debtors respectfully submit that the terms of the Engagement Letter are reasonable and customary and should be approved in these chapter 11 cases.

28. Courts in this jurisdiction have approved relief similar to the relief requested in this application. *See, e.g., In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (Bankr. D. Del. Dec. 17, 2010) (order authorizing retention of Alvarez & Marsal North America, LLC as restructuring consultant *nunc pro tunc* to the petition date); *In re OTC Holdings Corp.,* Case No. 10-12636 (Bankr. D. Del. Sept. 17, 2010) (order authorizing retention of Protiviti, Inc. as restructuring consultant *nunc pro tunc* to the petition date); *In re Atrium Corp.*, Case No. 10-10150 (Bankr. D. Del. Feb. 24, 2010) (order authorizing retention of Deloitte Financial Advisory Services LLP as bankruptcy administrative services provider *nunc pro tunc* to the petition date); *In re Majestic Star Casino, LLC*, Case No. 09-14136 (Bankr. D. Del. Dec. 17, 2009) (order authorizing retention of XRoads Solutions Group, LLC as restructuring advisor *nunc pro tunc* to

the petition date); *In re Accuride Corp.*, Case No. 09-13449 (Bankr. D. Del. Nov. 2, 2009) (order authorizing retention of Zolfo Cooper, LLC as restructuring consultants *nunc pro tunc* to the petition date); *In re R.H. Donnelley Corp.*, Case No. 09-11833 (Bankr. D. Del. July 20, 2009) (order authorizing retention of Deloitte Financial Advisory Services LLP as financial advisor and administrative services provider *nunc pro tunc* to the petition date).[6]

**B. The Indemnification Provisions are Appropriate**

29. The indemnification provisions set forth in the Engagement Letter were fully negotiated between the Debtors and A&M. Moreover, and as described above, the Debtors are seeking approval of the modified indemnification and contribution provisions consistent with the practice in this jurisdiction.

30. This Court has approved relief similar to the relief requested in this application with respect to modification of indemnification and contribution provisions. *See*, *e.g.*, *In re Atrium Corp.*, Case No. 10-10150 (Bankr. D. Del. Feb. 24, 2010) (approving similar modified indemnification provisions for the retention and employment of Deloitte Financial Advisory Services LLP); *In re The Majestic Star Casino, LLC*, Case No. 09-14136 (Bankr. D. Del. Dec. 17, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC); *In re Muzak Holdings LLC*, Case No. 09-10422 (Bankr. D. Del. Apr. 6, 2009) (approving similar modified indemnification provisions for the retention and employment of Moelis & Company LLC); *In re Leiner Health Prods., Inc.*, Case No. 08-10446 (Bankr. D. Del. Apr. 8, 2008) (approving similar modified indemnification provisions for the retention and employment of Houlihan Lokey Howard & Zukin Capital, Inc.).

31. Accordingly, the Debtors respectfully submit that the terms of the indemnification

[6] Because of the voluminous nature of the orders cited herein, they are not attached to the motion. Copies of these orders are available on request to the Debtors' counsel.

provisions (as modified) are reasonable and customary and should be approved in these chapter 11 cases.

**C. The Retention of A&M is Critical to the Debtors' Success**

32. Denial of the relief requested herein will deprive the Debtors of the assistance of a uniquely qualified restructuring advisor. Moreover, with over four months of services provided to the Debtors, a denial of A&M's employment would result in an unjust disadvantage to the Debtors and all parties in interest because of A&M's understanding of the Debtors' operations. Indeed, if the Debtors were forced to engage a new restructuring advisor who lacks a thorough understanding of the Debtors' businesses and the initiatives that have been implemented over the course of the last four months, such change would mandate the commitment of significant and costly resources to educate a replacement. To build upon this momentum and continue a constructive dialogue between the Debtors, their other restructuring advisors, creditor constituencies and all parties in interest, it is vital that A&M continue to lead the charge on the Debtors' behalf.

33. Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support the entry of an order authorizing the Debtors to retain and employ A&M in these chapter 11 cases on the terms described herein and in the Engagement Letter.

**Notice**

34. The Debtors have provided notice of this motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of Creditors Holding the 50 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the agents for the Debtors' proposed debtor in possession lenders; (d) counsel to the agent for the Debtors' prepetition asset-based revolving lending facility; (e) counsel to the

agent for the Debtors' prepetition first lien term loan; (f) counsel to the agent for the Debtors' prepetition second lien notes and unsecured notes; (g) the Delaware Secretary of State; (h) the Delaware Secretary of Treasury; (i) the Delaware State Attorney General; (j) the Office of the United States Attorney General for the State of Delaware; (k) the Internal Revenue Service; and (l) the Securities and Exchange Commission. In light of the nature of the relief requested in this motion, the Debtors respectfully submit that no further notice is necessary.

## No Prior Request

35. No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*



PHIL1 1366169-1

WHEREFORE, for the reasons set forth herein and in the Campagna Declaration, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to retain and employ A&M as their restructuring advisor in accordance with the terms and conditions set forth in the Engagement Letter annexed as **Exhibit 1** to **Exhibit A** attached hereto, subject to the modifications set forth in the proposed Order, *nunc pro tunc* to the Petition Date and (b) granting such other and further relief as may be appropriate.

Dated: January 25, 2011
Wilmington, Delaware

Appleseed's Intermediate Holdings LLC
Appleseed's Acquisition, Inc.
Appleseed's Holdings, Inc.
Arizona Mail Order Company, Inc.
Bedford Fair Apparel, Inc.
Blair Credit Services Corporation
Blair Factoring Company
Blair Holdings, Inc.
Blair International Holdings, Inc.
Blair LLC
Blair Payroll, LLC
Draper's & Damon's Acquisition LLC
Draper's & Damon's LLC
Fairview Advertising, LLC
Gold Violin LLC
Haband Acquisition LLC
Haband Company LLC
Haband Oaks, LP
Haband Online, LLC
Haband Operations, LLC
Johnny Appleseed's, Inc.
Linen Source Acquisitions LLC
LM&B Catalog, Inc.
Monterey Bay Clothing Company, Inc.
Norm Thompson Outfitters, Inc.
NTO Acquisition Corporation
Orchard Brands Insurance Agency LLC
Wintersilks, LLC

*/s/ T. Neale Attenborough*

T. Neale Attenborough
Chief Executive Officer
Appleseed's Intermediate Holdings LLC